CITY OF NORWICH ET AL. *v.* HOUSING AUTHORITY OF
THE TOWN OF NORWICH ET AL.
(13922)

PETERS, C. J., SHEA, GLASS, HULL and BORDEN, Js.

Argued May 31—decision released August 7, 1990

*Hugh I. Manke,* with whom were *Charles C. Whitty* and, on the brief, *Michael Blanchard,* for the appellants (named defendant et al.).

*Leeland J. Cole-Chu,* with whom was *Marc S. Mandell,* assistant corporation counsel, for the appellees (plaintiffs).

HULL, J. The dispositive issue in this appeal is whether the city of Norwich has the power to abolish

the housing authority of the town of Norwich (town housing authority) and the housing authority of the city of Norwich (city housing authority), created pursuant to the predecessor of General Statutes § 8-40,[1] and then to transfer the assets and liabilities of those agencies to a newly created Norwich Housing Authority. The plaintiffs, the city of Norwich and Norwich Housing Authority, brought a declaratory judgment action against the defendants, the town housing authority, the city housing authority and their respective members and the state department of housing, seeking a determination of the propriety of the city of Norwich's actions. The trial court concluded that the city had the power it sought to exercise. From the judgment rendered in favor of the plaintiffs, the defendants appealed to the Appellate Court; we subsequently transferred the case to ourselves pursuant to Practice Book § 4023.[2] We affirm the judgment of the trial court.[3]

The underlying facts, as set forth in the trial court's memorandum of decision, are undisputed. During the 1940s, two separate housing authorities were created pursuant to the statutory predecessor of § 8-40 to serve respectively the town of Norwich and the city of Norwich, then distinct political entities. In 1951, the city of Norwich and the town of Norwich were duly consolidated, after which consolidation the town housing authority and the city housing authority continued their separate existence, including separate executive, maintenance, bookkeeping and other staff.

---

[1] We rely in this opinion on the language of General Statutes § 8-40, however, as did the trial court and the parties, because the variations in language between § 8-40 and its predecessor are immaterial for our purposes.

[2] The state department of housing is not a party to this appeal.

[3] The defendant town housing authority filed a motion to dismiss this appeal on the ground that the trial court lacked jurisdiction to hear the action. We have considered this motion and, without further comment, find the ground therein to be insubstantial. Accordingly, the motion is denied.

The department of housing, a state agency, has contractual relations with both the town housing authority and the city housing authority and oversees their administration of certain state housing programs. Both authorities administer the state elderly and moderate income rental housing programs. The town housing authority additionally administers certain federal programs. The housing programs of the two authorities relate to housing units within the geographical bounds of the city of Norwich. Likewise, all real and personal property in which the authorities have interests is located within the geographical bounds of the city of Norwich.

On October 3, 1988, in compliance with the provisions of the charter of the city of Norwich, the Norwich city council adopted ordinance 1155, providing in relevant part for the following: (1) the establishment of a new unified housing authority, known as the Norwich Housing Authority; (2) the assignment of all existing rights, duties, assets, obligations, contracts and liabilities of the town and city housing authorities to the Norwich Housing Authority, effective immediately; and (3) the abolition of the town and city housing authorities effective December 31, 1988. On October 17, 1988, the Norwich city council enacted a resolution, declaring the need for a housing authority in the city of Norwich. The Norwich Housing Authority is the entity referred to by that name in ordinance 1155 and in the October 17, 1988 resolution.

The town housing authority and the city housing authority, on the advice of their respective counsel, have not recognized as legally valid the ordinance or resolution and have continued to operate as they did prior to the enactment of the ordinance and resolution. The Connecticut legislature has passed no special or public act consolidating or abolishing either the town housing authority or the city housing authority.

The plaintiffs claimed at trial that the provisions of the general statutes that create and empower housing authorities demonstrate that the housing authorities were intended by the legislature to be local public bodies. They also claimed that Norwich was empowered by its charter to consolidate the local public bodies. Accordingly, the plaintiffs argued, the defendant housing authorities are the subject of local legislation and subject to consolidation by the city. The defendants countered with the argument that since the housing authorities were created by state statute, any creation, consolidation or abolishment of the authorities can be accomplished only by an act of the legislature.

The trial court's analysis of several state statutes and the Norwich charter provided the basis for its conclusion that the city had not acted beyond the scope of its authority. First, the court referred to General Statutes § 8-40 that states in relevant part: "In each municipality of the state there is created a public body corporate and politic to be known as the 'housing authority' of the municipality; provided such authority shall not transact any business or exercise its powers hereunder until the governing body of the municipality by resolution declares that there is need for a housing authority in the municipality . . . . " Relying on this language, the court determined that the legislature had delegated the power to each municipality to establish a housing authority in the event that the municipality determined a need for such an entity.

The court then turned to General Statutes § 7-193 (b), a provision enacted as part of the Home Rule Act, that provides in relevant part: "Every municipality shall have all municipal officers, departments, boards, commissions and agencies which are required by the general statutes or by the charter. Each municipality may have any . . . departments, boards, commissions and agencies which are specifically allowed by the general

statutes or which are necessary to carry out any municipal powers, duties or responsibilities under the general statutes. All such . . . departments, boards, commissions and agencies shall be . . . organized in the manner provided by the general statutes, except as otherwise provided by the charter or by ordinances or resolutions adopted pursuant to such charter. Any municipality may, by charter or by ordinances or resolutions adopted pursuant to such charter, alter the method of . . . organization of any or all of such . . . departments, boards, commissions or agencies, including combining or separating the duties of each, unless specifically prohibited from making such alteration by the constitution or the general statutes."

In the trial court's view, § 7-193 (b) and the other provisions of the Home Rule Act indicate the legislature's intent "that issues of local concern are most logically answered locally, pursuant to a home rule charter . . . ." *Caulfield* v. *Noble,* 178 Conn. 81, 86, 420 A.2d 1160 (1979). In this regard, the court stated that it would not apply a strict construction to the home rule legislation, because to do so would stifle local initiative and, "if carried to an extreme, would cripple home rule." The court then concluded that a housing authority is a local concern as indicated in the statutes pertaining to the establishment and operation of the housing authorities. See General Statutes § 8-39 (providing for the housing authorities' area of operation); General Statutes §§ 8-41 and 8-43 (conferring on the chief executive officer of the municipality the power to appoint and remove housing authority commissioners); General Statutes § 8-44b (providing for municipal appointment, review, promotion and supervision of the housing authority police force); General Statutes § 8-51 (subjecting the housing authority to local planning, zoning, sanitary and building laws); General Statutes § 8-63 (requiring the housing authority to submit annual reports to the municipality).

The court noted that the Norwich charter reveals that the city possesses the following authority: certain enumerated powers in addition to all powers granted under the constitution and statutes; the powers fairly implied or incidental to powers expressly granted and other powers incident to the management of the property, government and affairs of the city the exercise of which is not expressly forbidden by the constitution and statutes; and the power to provide by ordinance for the creation of additional divisions, offices and agencies, and for their alteration, and for their assignment and reassignment of departments. The court then concluded that it could find no authority prohibiting Norwich from making the alteration of agencies that it had undertaken.

The court also noted the language of § 8-40 providing that "[i]n each municipality of the state there is created *a* public body corporate and politic to be known as *the* 'housing authority' of the municipality . . . . " (Emphasis added.) On the basis of this provision, the court determined that the single municipality of Norwich should have only one housing authority. The trial court, accordingly, rendered judgment in favor of the plaintiffs.

We review the trial court's construction of the various statutes here involved "in light of well established principles that require us to ascertain and give effect to the apparent intent of the legislature. *Norwich* v. *Silverberg,* 200 Conn. 367, 370–71, 511 A.2d 336 (1986); *State* v. *Kozlowski,* 199 Conn. 667, 673, 509 A.2d 20 (1986); *Hayes* v. *Smith,* 194 Conn. 52, 57, 480 A.2d 425 (1984); *State* v. *Delafose,* 185 Conn. 517, 521, 441 A.2d 158 (1981); 2A Sutherland, Statutory Construction (4th Ed. 1984) § 45.05. When the words of a statute are plain and unambiguous, we need look no further for interpretive guidance because we assume that the words themselves express the intention of the legisla-

ture. *Johnson* v. *Manson,* 196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986); *Mazur* v. *Blum,* 184 Conn. 116, 118–19, 441 A.2d 65 (1981). When we are confronted, however, with ambiguity in a statute, we seek to ascertain the actual intent by looking to the words of the statute itself; *State* v. *Kozlowski,* supra, 673; *Dukes* v. *Durante,* 192 Conn. 207, 214, 471 A.2d 1368 (1984); the legislative history and circumstances surrounding the enactment of the statute; *State* v. *Kozlowski,* supra, 673; *DeFonce Construction Corporation* v. *State,* 198 Conn. 185, 187, 501 A.2d 745 (1985); *State* v. *Parmalee,* 197 Conn. 158, 161, 496 A.2d 186 (1985); *State* v. *Delafose,* supra, 522; and the purpose the statute is to serve. *Peck* v. *Jacquemin,* 196 Conn. 53, 64, 491 A.2d 1043 (1985); *Verrastro* v. *Sivertsen,* 188 Conn. 213, 221, 448 A.2d 1344 (1982); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 8, 434 A.2d 293 (1980)." *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986).

The question presented in this case requires a much broader field of inquiry than is ordinarily undertaken. We must first determine, in the light of the lengthy historical and governmental background of the adoption of the Home Rule Act in 1957, whether to adopt an approach of strict construction of the home rule statutes, as amended through the years, or an expansive approach firmly rooted in their ameliorative provisions.[4] Suffice it to say, if ever a statutory plan cried out for an expansive construction favoring local municipal authority over its own affairs, it is the Home Rule Act. Our path in reaching this conclusion is well lighted

[4] Janice Griffith's article, "Connecticut's Home Rule: The Judicial Resolution of State and Local Conflicts," at 4 University of Bridgeport Law Review 177 (1983), cited by the trial court, contains a comprehensive analysis of the background and development of home rule legislation in Connecticut.

by our discussion in *Caulfield* v. *Noble,* supra, 85–87: "The purpose . . . of Connecticut's Home Rule Act is clearly twofold: to relieve the General Assembly of the burdensome task of handling and enacting special legislation of local municipal concern and to enable a municipality to draft and adopt a home rule charter or ordinance which shall constitute the organic law of the city, superseding its existing charter and any inconsistent special acts. General Statutes § 7-188; *Sloane* v. *Waterbury,* 150 Conn. 24, 26–27, 183 A.2d 839 (1962); *State ex rel. Sloane* v. *Reidy,* 152 Conn. 419, 209 A.2d 674 (1965); *Shalvoy* v. *Curran,* 393 F.2d 55, 59 (2d Cir. 1968); see Litchfield, 'Municipal Home Rule—Connecticut's Mature Approach,' 37 Conn B.J. 390, 402 (1963); 56 Am. Jur. 2d, Municipal Corporations § 126; 62 C.J.S., Municipal Corporations § 124. The rationale of the act, simply stated, is that issues of local concern are most logically answered locally, pursuant to a home rule charter, exclusive of the provisions of the General Statutes. See Lockard, 'Home Rule for Connecticut's Municipalities,' 29 Conn. B.J. 51, 54 (1955). Moreover, home rule legislation was enacted 'to enable municipalities to conduct their own business and control their own affairs to the fullest possible extent in their own way . . . upon the principle that the municipality itself knew better what it wanted and needed than did the state at large, and to give that municipality the exclusive privilege and right to enact direct legislation which would carry out and satisfy its wants and needs.' *Fragley* v. *Phelan,* 126 Cal. 383, 387, 58 P. 923 (1899); accord 1 Antieau, Municipal Corporation Law, § 3.03; 1 McQuillin, Municipal Corporations (2d Ed.) § 93." See also *Windham First Taxing District* v. *Windham,* 208 Conn. 543, 554–55, 546 A.2d 226 (1988).

The parties devoted much of their appellate briefs to the articulation of contrasting views as to the appro-

priate characterization to be given a housing author-
ity, i.e., whether a housing authority is a local agency
and thus subject to abolishment and consolidation by
the municipality or a state agency and thus subject to
abolishment and consolidation only by the General
Assembly. Although we do not find this approach to
the issue to be necessarily conclusive, these arguments,
to which the trial court also adverted, require consider-
ation and resolution as a prelude to our eventual con-
clusion that the authority of Norwich to abolish and
consolidate the two housing authorities is found in the
general statutes and the provisions of the Norwich char-
ter. We paraphrase the parties' arguments as raising
the issue of whether a housing authority is so much a
state agency that it can only be abolished by legisla-
tive action.

The defendants argue that Norwich did not have the
power to act as it did in the face of state statutes creat-
ing the housing authorities. The argument of the
defendants has two main thrusts. First, they stress that
a housing authority is not a board, commission, agency
or department of the municipality in which it is located,
but is a separate corporation, organized and existing
under the aegis of the state. They cite as authority for
their claim our statement in *Gordon* v. *Bridgeport
Housing Authority,* 208 Conn. 161, 186, 544 A.2d 1185
(1988), that " '[a] municipal authority created under a
municipal authorities statute has been regarded as a
corporate agency of the state and not a creature, agent
or representative of the municipality organizing it.' 1
E. McQuillin, supra, § 2.29a." To the same effect is our
statement in *Austin* v. *Housing Authority,* 143 Conn.
338, 349, 122 A.2d 399 (1956): "The housing author-
ity is a distinct corporate entity. . . . It is not an
agency of the city . . . . " In that case, involving the
question of whether the plaintiff had standing to chal-
lenge the award by the housing authority of a contract

for the purchase of insurance, we held that since the housing authority was not an agency of the city, any improper management by the authority could not in itself result in an increase of city taxes. That this principle is not set in concrete, however, is shown by the case of *Housing Authority* v. *Dorsey,* 164 Conn. 247, 251, 320 A.2d 820, cert. denied, 414 U.S. 1043, 94 S. Ct. 548, 38 L. Ed. 2d 335 (1973), where, in determining whether tenants in a housing authority project could serve as commissioners of that same agency, we stated in dictum that "[a] housing authority is a public corporation *created* by the municipality to exercise certain delegated sovereign powers pursuant to §§ 8-40 [through] 8-81 of the General Statutes." (Emphasis added.)

The defendants continue their argument by stating the proposition that a housing authority differs from a municipal board, commission, agency or department. The defendants note that, among other powers enumerated in General Statutes § 8-44, a housing authority is authorized to: sue and be sued; make and execute contracts; amend and repeal by-laws, rules and regulations; acquire, lease and operate housing projects; arrange or contract for services; collect rents; own, improve, purchase, lease, transfer, assign or sell real and personal property; exercise the power of eminent domain; investigate, study and make recommendations for housing based on need; cooperate with any public body, including a municipality, to issue bonds, pledge future income and mortgage property; bond itself by a variety of covenants designed to protect the interest of the bondholder; and borrow money and accept grants or other financial assistance from federal and state governments. Further, the defendants point out, a housing authority is vested with certain state governmental privileges such as tax exemption. See General Statutes § 8-58.

The defendants then launch into the second aspect of their argument that deals directly with the local versus state agency question found in § 8-40. The defendants claim that § 8-40 is substantially different from an enabling act such as General Statutes §§ 8-1 and 8-1a, statutes that authorize a municipality to create zoning and planning commissions. They claim that the language "there is created" in § 8-40 means that the state has "created" the housing authority. We conclude that this claim construes the Home Rule Act entirely too narrowly, an approach which we have previously declined to follow. We look to the following language of § 8-40 to demonstrate the sterility of this claim: "provided such authority shall not transact any business or exercise its powers hereunder *until the governing body of the municipality by resolution declares that there is need for a housing authority in the municipality* . . . . " (Emphasis added.) Although § 8-40 contains the language "there is created," the "creation" in § 8-40 is inchoate, a mere empty shell until the municipality acts. Whatever the form of its words, § 8-40 is actually an enabling act specifically requiring municipal action to "create" the housing authority. As we said in *Madison* v. *Kimberley,* 118 Conn. 6, 10, 169 A. 909 (1934), a case involving local zoning: "If a [zoning] commission is set up, it is the act of the town and not the legislature."

We therefore conclude that § 8-40 does not stand for the proposition that, since the housing authorities were "created" by the state, only state action can abolish them. Housing authorities are hybrid organizations bearing many strong aspects of local authority and equally strong aspects of state authority. As the defendants acknowledge in their brief, "it is overly simplistic to characterize housing authorities in all respects as either state or local, because they have features of both . . . . "

Since the local versus state authority dichotomy does not give a definite answer to the issue in this case, we now address the propriety of the city's actions in light of certain general principles concerning the powers of municipalities, the legislative intent as found in the relevant General Statutes and the Norwich Charter.

" 'It is settled law that as a creation of the state, a municipality has no inherent powers of its own. *City Council* v. *Hall,* 180 Conn. 243, 248, 429 A.2d 481 (1980); *Pepin* v. *Danbury,* 171 Conn. 74, 83, 368 A.2d 88 (1976); *New Haven Water Co.* v. *New Haven,* 152 Conn. 563, 566, 210 A.2d 449 (1965); *State ex rel. Coe* v. *Fyler,* 48 Conn. 145, 158 (1880).' *New Haven Commission on Equal Opportunities* v. *Yale University,* 183 Conn. 495, 499, 439 A.2d 404 (1981). A municipality has only those powers that have been expressly granted to it by the state or that are necessary for it to discharge its duties and to carry out its objects and purposes. *City Council* v. *Hall,* supra, 248. See *Pepin* v. *Danbury,* supra. In determining whether the municipality had the authority to adopt [ordinance 1155], then, 'we do not search for a statutory prohibition against such an enactment; rather, we must search for statutory authority for the enactment.' *Avonside, Inc.* v. *Zoning & Planning Commission,* 153 Conn. 232, 236, 215 A.2d 409 (1965)." *Buonocore* v. *Branford,* 192 Conn. 399, 401–402, 471 A.2d 961 (1984).

There is no question in this case that the city of Norwich and the town of Norwich were authorized under the predecessor of § 8-40 to create the city and town housing authorities. It has long been the law in this state that the power to create necessarily includes the power to abolish. *Madison* v. *Kimberley,* supra, raised the question of whether a municipality, having once created a zoning commission, had the power to rescind that action and abolish zoning. In upholding the municipality's action, we stated: "The present case is governed by the familiar principle that the grant of

power to enact ordinances ordinarily implies the power to repeal them. *Terrett* v. *Sharon,* 34 Conn. 105, 108 [1867]; *State ex rel. Reiley* v. *Chatfield,* 71 Conn. 104, 112, 40 Atl. 922 [1898]; *State ex rel. McDermott* v. *Wilkinson,* 88 Conn. 300, 90 Atl. 929 [1914] . . . . We cannot read into the statute empowering towns to appoint a zoning commission . . . any expression of intention upon the part of the legislature that a town having once exercised the power could not thereafter rescind its action. The language of the statute shows clearly that the legislature intended it to be optional with a town whether or not it shall have a zoning system. If the power is exercised and commissioners appointed, the town, as it has the option to adopt such a system, may thereafter terminate it in like manner." (Citations omitted.) *Madison* v. *Kimberley,* supra, 11. Norwich, therefore, had the power to abolish the existing housing authorities, and thereafter, pursuant to § 8-40, had the power to establish a Norwich Housing Authority and, by implication, to assign to it the facilities and operations of the recently abolished authorities.

We find further support for this conclusion in General Statutes § 7-193 (b) that provides in pertinent part: "Each municipality may have any municipal officers, departments, boards, commissions and agencies *which are specifically allowed by the general statutes* or which are necessary to carry out any municipal powers, duties or responsibilities under the general statutes. All such officers, departments, boards, commissions and agencies shall be elected, appointed and organized in the manner provided by the general statutes, except as otherwise provided by the charter or by ordinances or resolutions adopted pursuant to such charter. *Any municipality may, by charter or by ordinances or resolutions adopted pursuant to such charter, alter the method of election, appointment or organization of any or all of such officers, departments, boards, commissions or agencies, including combining or separating the*

*duties of each,* unless specifically prohibited from making such alteration by the constitution or the general statutes." (Emphasis added.) As the trial court concluded, no constitutional or statutory provision prohibits the alteration of agencies undertaken by Norwich. The last sentence of the above quoted language, therefore, specifically and unequivocably authorizes the adoption of ordinance 1155.

We need now determine only whether the adoption of the ordinance was within the scope of the city authority as set forth in its city charter. "The town charter, whether adopted by special act of the General Assembly or . . . under the Home Rule Act . . . constitutes the organic law of the municipality. *Caulfield* v. *Noble,* [supra, 86]; *Bredice* v. *Norwalk,* 152 Conn. 287, 292, 206 A.2d 433 (1964). 'It is well established that a [town's] charter is the fountainhead of municipal powers. *State ex rel. Raslavsky* v. *Bonvouloir,* 167 Conn. 357, 362, 355 A.2d 275 (1974). The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised. *Food, Beverage & Express Drivers Local Union* v. *Shelton,* 147 Conn. 401, 405, 161 A.2d 587 (1960); *Thomson* v. *New Haven,* 100 Conn. 604, 606, 124 A. 247 (1924); *State ex rel. Southey* v. *Lashar,* 71 Conn. 540, 545–46, 42 A. 636 (1899).' *Peretta* v. *New Britain,* 185 Conn. 88, 92, 440 A.2d 823 (1981)." *West Hartford Taxpayers Assn., Inc.* v. *Streeter,* 190 Conn. 736, 742, 462 A.2d 379 (1983); *Windham First Taxing District* v. *Windham,* supra, 556.

The Norwich Charter, 1951 Special Acts, No. 573; 26 Spec. Laws 459, No. 573; provides in relevant part as follows: "The city shall have the following specific powers *in addition to all powers granted to towns and cities under the constitution and general statutes* of the state of Connecticut, such powers to be exercised by the city through the enactment and enforcement of ordinances, by-laws or otherwise . . . .

"The enumeration of particular powers [herein] shall not be construed as limiting this general grant of power but shall be considered as in addition thereto. The city of Norwich shall have not only the powers specifically granted by this chapter but all powers fairly implied in or incident to the powers expressly granted, *and all other powers incident to the management of the* property, *government and affairs of the city the exercise of which is not expressly forbidden by the constitution and general statutes of the state of Connecticut.*

\* \* \*

"The council shall have the *power to provide by ordinance* not inconsistent with the provisions of this charter for the exercise of all powers provided for [herein] and . . . *for the creation of additional divisions, offices and agencies, for their alteration or abolition, for their assignment and reassignment to departments* . . . .

\* \* \*

*"All ordinances of the city and town of Norwich . . . in force at the effective date of this charter and not inconsistent herewith, shall remain in force until amended, repealed or superceded as herein provided* . . . ." (Emphasis added.)

We conclude that the general statutes and the Norwich charter authorize the city of Norwich to abolish the town and city housing authorities and consolidate their operations in the Norwich Housing Authority.[5]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[5] The plaintiffs brief a second issue: "Should the trial court's judgment be affirmed on the alternate ground that ample powers have been granted by the General Assembly to the City of Norwich to consolidate the affairs of the defendant housing authorities and to abolish the defendant housing authorities and, therefore, article tenth, section 1, of the Connecticut Constitution prohibits the General Assembly from enacting special legislation to effect such consolidation or abolition?" In view of our disposition of the case, we do not reach this issue.