[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action seeking a permanent injunction to enjoin the state commissioner of housing from operating any housing project pursuant to Section 8 of the United States Housing Act of 1937 as amended (hereinafter "Sec. 8 program") in the Town of East Hartford. The plaintiff is a public housing authority organized and operating under Chapter 128 of the Connecticut General Statutes and East Hartford ordinances. See Norwich v. Housing Authority, 216 Conn. 112, 122-123 (1990). The CT Page 9192 plaintiff has administered the Section 8 certificate and voucher programs pursuant to 24 C.F.R. § 882 in the Town of East Hartford since 1975. Section 8 certificate of voucher programs provide housing assistance payments to low and moderate income people in the payment of rent in privately owned existing rental housing. This is done on the basis of an Annual Contributions Contract (hereinafter "ACC") between the plaintiff and the United States Department of Housing and Urban Development (hereinafter "HUD").
The defendant is the state commissioner of housing duly appointed and approved as per General Statutes 4-5 to 4-8 inclusive.
The Section 8 programs which are the subject of this action are the Existing Housing and the Housing Voucher programs which are regulations promulgated in 24 Codes of Federal Regulations (hereinafter C.F.R.). The programs exist to provide low and moderate income families decent, safe and sanitary housing in privately owned residences. This is done under public housing authority (hereinafter PHA) contracts with a private landlord to subsidize the difference between the rent agreed to by the landlord and the PHA and the amount of rent which the tenant can afford. This subsidy money is obtained by the PHA from HUD. Each year the PHA and HUD enter into an Annual Contributions Contract (hereinafter ACC) which provides to the PHA the number of units by various bedroom size and the appropriation to subsidize the units. The ACC works the following way. When a PHA finds a family which meets the HUD income requirements, that family is issued a certificate of eligibility. The family then takes the certificate into a public landlord who will accept the family as a tenant. If the premises meet "HUD" standards of habitability, the landlord is accepted into the program. The PHA that successfully places a tenant in a Sec. 8 situation receives a monetary amount upon placement and another payment each month that the tenant remains in the housing as a fee for administering the program. HUD handbook Sec. 8 Housing Program, November, 1979 requires PHA to utilize at least 95% of the certificates that it has under its contract with HUD, that is, have an occupancy rate of at least 95% (Plaintiff's Ex. QQ).
The authority of the state to run a Sec. 8 project is presently found in General Statutes 8-120 and 8-121.
Those statutes go back to Conn. Gen. Stat. 1949 Rev. Sec. 962 and 963. Initially the public works commission had the power to be a PHA. In 1963, by 1967 P.A. 522 Sec. 8, the commissioner of community affairs was substituted for the public works commission. In 1978, 1978 P.A. 78-303, Sec. 81, the commissioner of community affairs was replaced by the commissioner of economic development. In 1979, 1979 P.A. 79-598 Sec. 3, 4 10, the housing commissioner replaced the commissioner of economic development. CT Page 9193 In 1986 the right to be a PHA was removed from the commissioner of housing and lodged with the Connecticut Housing Authority. 1986 P.A. 86-281, Sec. 3.
As presently written in applicable part, the statute reads:
 Notwithstanding any other provisions of this section, the Connecticut housing authority may exercise any of the powers granted by subsections (a) and (b) of Section 8-121 for the purpose of initiating a housing project assisted in whole or in part by the federal government pursuant to Section 8 of the United States Housing Act of 1937 as it may from time to time be amended, in any municipality, provided (1) the local governing body of the municipality shall, by resolution, approve the housing project and (2) if an active local housing authority exists in the municipality such local housing authority shall, by resolution, approve the housing project. (emphasis added) General Statutes 8-120.
Sec. 8-121 (a) provides that the Connecticut Housing Authority has succeeded to the powers of a housing authority formerly exercised by the commissioner of housing.
Sec. 8-121 (b) provides that the Connecticut Housing Authority shall have the same powers as a local housing authority.
Under the Federal Sec. 8 program, the term project is identified. "The Program under this ACC consists of the projects listed in Exhibit I of the ACC Part I, each of which represents a funding increment for the Program." Defendant's Exhibit 1, Annual Contributions Contract Part 1 Number B 2035 between the State of Connecticut — Department of Housing is the named PHA and HUD dated 4-6-87 covering the fiscal year starting January 26, 1977, p. 2. Exhibit I shows 19 projects.
The defendant argues that "housing project" should have a brick and mortar definition as per General Statutes 8-39 (i). But the definitions in Sec. 8-39 only apply to Chapter 128, and the statutes under consideration (Sec. 8-120 and 8-121) appear in Chapter 129. The state also argues that Sec. 8-120 and 8-121
do not restrict him from placing Section 8 clients in any town in the state including East Hartford.
"When the words of a statute are plain and unambiguous, we need look no further for interpretive guidance because we assume that the words themselves express the intention of the legislature. Johnson v. Manson, 196 Conn. 309, 316, 493 A.2d 846
CT Page 9194 (1985), cert. denied, 474 U.S. 1063, 106 S.Ct. 813,88 L.Ed.2d 787 (1986); Mazur v. Blum, 184 Conn. 116, 118-19, 441 A.2d 65
(1981); Norwich v. Housing Authority, supra p. 118-19."
In addition, the remarks of Rep. McCluskey and Sen. Schneller in the General Assembly proceedings in 1975 show that this commission as a PHA only has the power in a town if both the local legislative body and the housing authority by resolution request him to place Section 8 housing units in that town. Plaintiff Exhibits T and U. Connecticut General Assembly House of Representatives Proceedings 1975, Vol. 18, Part 5 page 2352 Remarks of Rep. McClusky and Connecticut General Assembly Senate Proceedings 1975, Vol. 18, Part 4, pages 1923-1924 remarks of Sen. Schneller.
Neither the town of East Hartford's governing body nor the plaintiff have ever given the state permission to run a Sec. 8 program in East Hartford.
For years, the state operated no Sec. 8 project in any town where it had not received permission from the local government and housing authority.
Recently the defendant has entered into ACC with HUD which would allow placement in any town in the state. The defendant has actually placed persons in Sec. 8 housing in East Hartford.
In the spring of 1988 the plaintiff discovered that the state was operating an existing Sec. 8 program in the Town of East Hartford.
In the summer of 1989 the defendant signed an agreement with Janice Wells, president of HartConn Associates, Inc., a Connecticut corporation transferring the administration of ACC contracts Number B 2035 and B 2036E which the defendant had with HUD to HartConn Associates, Inc. Plaintiff's Exhibit SS. The contract runs from the date that it is approved by the Attorney General of the State until January 26, 1991 (#4a.). The defendant signed the agreement on July 14, 1989. HartConn Associates, Inc. signed the agreement — acting by its president, Janice Wells, on July 14, 1989.
On August 8, 1989 an Assistant Attorney General approved the agreement "as to form."
Appendix III to Plaintiff's Ex. JJ is the invitation to bid sent out by the defendant on this matter. On page 5 it states that "[a]t present there are 70 communities participating in our program. . . ." CT Page 9195
Yet the defendant wrote to HUD on June 7, 1989 that it was hiring a private contractor to administrate the program and amended contracts ACC with HUD by adding: "Section 8 certificates may be utilized across the entire State of Connecticut in all 169 municipalities", Plaintiff's Ex. JJ Append. IV, letter of June 7, 1989, p. 2.
Under the contract at the present level of 1700 units in placement, HartConn stands to earn administration fees of approximately $850,000. per year. In addition, there are an additional 300 units unfilled. The defendant, under its contract with HartConn, still retains a part of the fee, roughly one-seventh of the administration fee.
As a result of this action and concerns by HUD that the defendant has no legal authority to operate Sec. 8 programs in a town which it has not been instituted by the local legislation and housing authority to enter, the plaintiff, on August 16, 1990, in its most recent request to HUD for projects, the defendant informed HUD that he would provide assistance for the requested projects only in towns where he had been invited to so do. Plaintiff's Ex. UU.
At the present time, the plaintiff has a waiting list of 44 families meeting the eligibility criteria seeking housing.
One person on the East Hartford list, Lori Crew, was placed by the defendant in title 8 housing in East Hartford. The plaintiff has been informed by at least one landlord who owns 185 units that he will no longer participate in title 8 lease. because of late payments of rent in units administered by the state. A Thomas Dogg, who owns and manages various properties throughout the State and including rental properties in East Hartford on which he has Section 8 vouchers with the defendant testified that he has suffered a 5 month delay in receiving rental checks.
The plaintiff has established to the satisfaction of the court that had the defendant not placed Sec. 8 tenants in East Hartford, then plaintiff would have so placed them. By losing the placement, the plaintiff has lost the administrative fee it would have received from HUD.
The defendant argues that the plaintiff has failed to show that it has suffered irreparable harm and that the competition is good for the plaintiff. Clearly for reasons cited above, the plaintiff has met that burden.
Judgment may enter in favor of the plaintiff. The defendant in his capacity as Commissioner of the Connecticut Department of CT Page 9196 Housing is permanently enjoined from operating any Section 8 programs in the Town of East Hartford.
CLARK, J.