## STEPHEN DEGUZIS ET AL. *v.* DANA N. JANDREAU
### (10240)

DUPONT, C. J., LAVERY and FREEDMAN, Js.

Argued February 14—decision released April 21, 1992

*Theodore J. Wurz,* with whom, on the brief, was *Mary-Lynn Krusz,* for the appellant (plaintiff John Bukowski).

*James Ziogas, Jr.,* with whom, on the brief, was *Arthur D. Machado,* for the appellee (defendant).

FREEDMAN, J. The plaintiff John Bukowski in this action in quo warranto[1] appeals from the trial court's judgment in favor of the defendant. Bukowski claims

[1] General Statutes § 52-491 provides: "When any person or corporation usurps the exercise of any office, franchise or jurisdiction, the superior court may proceed, on a complaint in the nature of a quo warranto, to punish such person or corporation for such usurpation, according to the course of the common law and may proceed therein and render judgment according to the course of the common law."

that the trial court (1) improperly found that the defendant met his burden of proving that he holds the position of captain in the Bristol fire department by right, and (2) improperly permitted one of the defendant's witnesses to testify as an expert witness. We affirm the judgment of the trial court.

The plaintiffs commenced this action against the defendant by filing a "Complaint in the Nature of Quo Warranto" dated February 26, 1991. The complaint requested that the defendant appear in court and show by what warrant he claims to hold the office, and exercise the rights, powers and privileges of the office of captain in the Bristol fire department. The plaintiffs claimed that the defendant illegally held that office because question number thirty-seven on the department's examination for promotion to captain was not "based on Fire Department material taken from current reference sources," as required by § 42 (d) of the Bristol town charter.[2]

The pertinent facts are not disputed. The plaintiffs and the defendant all were lieutenants in the Bristol fire department. On January 29, 1991, all three took a written examination to qualify for promotion to the position of captain. The defendant's final adjusted score on the written examination was 85.26, and his overall final score for purposes of the eligibility ranking list was 85.94. The plaintiffs, Stephen Deguzis and John Bukowski, received final overall scores of 85.53 and 84.91, respectively. After all other portions of the pro-

---

[2] Section 42 (d) of the Bristol town charter provides in pertinent part: "All candidates must first take a written exam, which shall be based on Fire Department material taken from current reference sources. Prior to the exam, each applicant shall upon request, be provided by Director of Personnel, with a bibliography of the sources used in preparing the test. Following the exam, the Director of Personnel shall upon the request of a candidate, arrange with the testing agency to make test questions and answer sheets of such candidate available for his inspection."

motion procedure were completed, the Bristol fire commission, on February 25, 1991, promoted the defendant to the position of captain, subject to his successful completion of a physical examination. The defendant successfully completed that examination on March 25, 1991.

Prior to the written examination, the director of personnel for the city of Bristol, James Byer, provided each test applicant with a list of reference sources from which the examination questions would be derived. Among the sources included in the list of reference sources was a publication entitled Fire Department Company Officer (2d Ed.) (Company Officer). On the examination, the defendant chose answer d to question thirty-seven and the plaintiffs each chose answer a.[3] The parties agree that answers b and c are incorrect and not derived from any of the reference sources provided. The answer key indicated that answer d is correct, and thus the defendant received credit for the correct answer, but the plaintiffs did not receive credit for their answers.[4]

The trial court rendered judgment in favor of the defendant, having concluded that the defendant had met his burden of proving that answer d is the correct answer to question thirty-seven according to fire department material used in preparing the written

---

[3] Question thirty-seven provided: "The supervisor who becomes aware of the existence of a 'grapevine' in his work group should?

"a. inform subordinates of all his decisions, thus eliminating the need for a grapevine.

"b. instruct his subordinates to eliminate this system whenever possible.

"c. take disciplinary action against those who pass on incorrect information via the grapevine.

"d. utilize the grapevine as an aid to communications."

[4] All parties agree that under any possible scenario other than answer d's being the sole correct answer, the defendant's final overall score would drop to the extent that he no longer would be the highest ranked candidate for the position.

exam,[5] and that the defendant therefore holds the position of captain of the fire department of the city of Bristol by right.

"In a quo warranto proceeding brought pursuant to General Statutes § 52-491, the Superior Court is to proceed to 'render judgment according to the course of the common law.' . . . A quo warranto proceeding under the common law lies only to test the defendant's right to hold office de jure. . . ." (Citations omitted.) *Cheshire* v. *McKenney,* 182 Conn. 253, 256, 438 A.2d 88 (1980). "In a quo warranto proceeding, the burden is upon the defendant to show a complete title to the office in dispute." *State ex rel. Gaski* v. *Basile,* 174 Conn. 36, 38, 381 A.2d 547 (1977).

A quo warranto action is a civil proceeding. 65 Am. Jur. 2d, Quo Warranto § 6. Thus, because the burden of proof in quo warranto actions is on the defendant, the trial court must find that the defendant met this burden by a preponderance of the evidence in order to find for the defendant.[6]

---

[5] The only fire department material that the trial court had before it at trial was chapter 3 of Company Officer, which concerned communications.

[6] Bukowski devoted much of the discussion in his appellate brief to what he perceived was an issue in the case, namely, whether the trial court applied the proper standard of review of the evidence presented in this case. In its memorandum of decision, the trial court discussed the testimony of the defendant's witnesses, and stated that it found "nothing arbitrary or illegal" in the determination of those witnesses that answer d is the correct answer. Bukowski has seized on this statement to argue that the trial court improperly determined that the defendant merely was required to demonstrate that the actions of the city of Bristol were not arbitrary or illegal.

Bukowski's argument in this regard lacks merit. The trial court's memorandum of decision clearly indicates that the trial court was well aware of the defendant's unusual burden in the action in quo warranto. At the outset, the memorandum of decision clearly and correctly stated that the defendant had the burden of proving that he had complete title to the office in dispute. Additionally, the trial court expressly held that "the defendant has met his burden of proof and that he holds the position of Captain . . . by right." There can be little doubt that the trial court applied the correct standard of review in this case.

Here, Bukowski challenges the trial court's factual finding that answer d is the correct answer to question thirty-seven, according to the reference material provided pursuant to § 42 (d) of the charter. He also contends that one of the defendant's witnesses did not use the reference material provided to form the basis of his opinion that d is the correct answer. "When the factual basis of the trial court's decision is challenged on appeal, the role of this court is to determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." *Cupina* v. *Bernklau,* 17 Conn. App. 159, 161, 551 A.2d 37 (1988). " '[T]he trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony." Id., 162. "On appeal, the function of this court is limited solely to the determination of whether the decision of the trial court is clearly erroneous. . . . This court cannot find fact or draw conclusions from primary facts found, but can only review such findings to determine whether they could have legally, logically and reasonably been found by the trier. . . .'' (Citations omitted.) *Robertson* v. *Nationwide Mutual Ins. Co.,* 20 Conn. App. 635, 637, 569 A.2d 565 (1990).

We have reviewed the record in this case and conclude that the trial court's finding that answer d is the correct answer to question thirty-seven according to the reference material provided is sufficiently supported by the substantial evidence presented by the parties.

The trial court received the testimony of, among others, Craig Zendzian, who designed and constructed the exam taken by the parties. The court received the testimony of Bruce Davey, a consultant who develops

and validates tests, primarily for employment in the public sector. It also received the testimony of Byer. One of Byer's duties in his capacity as director of personnel is to handle promotional testing for employment positions offered by the city of Bristol. In its memorandum of decision, the trial court indicated that its conclusion was reached after it had "studied the question and the possible answers, the applicable provisions of the Bristol City Charter, and the fire department material used in preparing the written exam . . . . In addition, it has heard evidence from several witnesses, including the plaintiffs, defendant, and a number of expert witnesses." On the basis of the evidence presented, the trial court concluded that answer d is the correct answer to question thirty-seven, and, because the answer to question thirty-seven was the only issue raised by the plaintiffs at trial, the court properly concluded that the defendant had met his burden of proof and that he holds the position of captain in the fire department of the city of Bristol by right. We cannot say that this conclusion is clearly erroneous.

Bukowski also claims that the trial court improperly permitted Davey to testify as an expert witness concerning the correct answer to question thirty-seven. Davey testified as an expert on the formulation of multiple choice tests. His testimony went to the wording of the question itself, and not to its subject matter. His conclusion that d is the correct answer was based on his expertise in test formulation and wording, not on the current reference sources provided to the applicants.

"The general standard for the admissibility of expert testimony in Connecticut is simply that the expert must demonstrate 'a special skill or knowledge, beyond the ken of the average juror, that, as properly applied, would be helpful to the determination of an ultimate issue.' " *Davis* v. *Margolis,* 215 Conn. 408, 416, 576 A.2d 489 (1990). Bukowski does not dispute that

Davey's testimony was useful to the finder of fact, but rather claims that because his testimony was not based on the current reference sources, his testimony as to the correct answer should not have been permitted. "When dealing with the testimony of expert witnesses, '[o]nce the threshold question of usefulness to the [trier of fact] has been satisfied, any other questions regarding the expert's qualifications properly go to the weight, and not the admissibility, of his testimony.' *Davis* v. *Margolis,* [supra, 417]." *Richmond* v. *Longo,* 27 Conn. App. 30, 38, 604 A.2d 374 (1992). Thus, questions regarding Davey's ability to testify that d is the correct answer to question thirty-seven go to the weight to be given to his testimony and such weight is to be determined by the trier of fact. *Marsh* v. *Washburn,* 11 Conn. App. 447, 455, 528 A.2d 382 (1987). Upon our review of the record and transcripts in this matter, we cannot say that the trial court abused its discretion in permitting Davey to testify, and we will not second guess the weight that it, as the trier of fact, accorded his testimony.

The judgment is affirmed.

In this opinion the other judges concurred.