[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Dated August 15, 1996
I. FACTS:
The plaintiffs herein are electors in the Town of Plainville. They seek to have determined that the statutory requirements were satisfied in the appointment of the defendants to a Charter CT Page 6143 Revision Commission. The parties have stipulated to the following facts. The plaintiffs, Val Dumais and Greg Granger, are taxpayers and electors of the Town of Plainville. The defendants, David Underwood, Thomas Arcari, Reade Clemens, Vincent Riera, Joseph Plourde, George Fensick and Gloria Saucier, have been acting as members of a Charter Revision Commission in the Town of Plainville. The defendants hold their office solely by virtue of a vote of four (4) members of the Plainville Town Council, whose total membership is seven (7), at a special meeting of the Council on May 28, 1996. Only four (4) Town Council members voted in favor of the May 28, 1996 resolution appointing the defendants as Charter Revision Commission members. In February, 1996, a prior Charter Revision Commission, the members of which had been appointed by five (5) affirmative votes of the Council, filed a report recommending certain changes which the Council requested and not recommending certain other changes which the Council had requested and the Council rejected the entire draft report.
The Council's May 28, 1996 resolution also directed the defendants to reconsider certain Charter provisions which the prior Charter Revision Commission considered and recommended no changes in February, 1996. At the May 28, 1996 special meeting of the Town Council, the Town Attorney advised the Council that five (5) affirmative votes were required to adopt the resolution naming the defendants as Charter Revision Commission members. The question regarding the validity of the defendants' appointment was raised publicly at the May 28, 1996 Council meeting and was the subject of newspaper articles in newspapers of general circulation in the Town of Plainville.
The Plainville Charter (Charter) was originally adopted on May 19, 1959, and became effective on October, 1959. Each of the previous ten (10) Plainville Charter Revision Commissions were initiated by the Town Council and were established by the Town Council resolutions approved by the affirmative vote of at least five (5) Council members. On June 6, 1996, the defendants established a schedule of meetings by which their final meeting would be concluded on Saturday, July 13, 1996. After June 13, 1996, the defendants advanced the schedule of meetings so that their second public hearing would be conducted on July 8, 1996. On July 9, 1996, the defendants delivered the July 8, 1996 draft report of proposed Charter changes to the Plainville Town Clerk. The Town Council has scheduled a public hearing on this draft report for August 19, 1996. All of their actions, including the July 8, 1996 draft report, are null and void and of no legal CT Page 6144 effect, unless the defendants were duly appointed to the office of Charter Revision Commission members.
II. DISCUSSION:
Prior to reaching the merits, this court needs to resolve two preliminary issues. First, whether the plaintiffs have standing to bring this complaint? Second, whether quo warranto is the appropriate method of challenging the Town Council's appointment of the charter revision commission?
"The standing to proceed in quo warranto is determined by the nature of the interest of the relator in the contested public office. . . . A taxpayer qualifies for standing because as such he is interested in having the duties annexed to the several public offices recognized by the city charter performed by persons legally elected or appointed thereto whether or not another person claims the office." Carleton v. Civil ServiceCommission, 10 Conn. App. 209, 216, 522 A.2d 825 (1987). General Statutes § 52-491 authorizes the plaintiffs to challenge the authority of the defendants' public office by a complaint in the nature of quo warranto. "A quo warranto proceeding under the common law lies only to test the defendant's right to hold office de jure. . . . In a quo warranto proceeding, the burden is upon the defendant to show a complete title to the office in dispute."DeGuzis v. Jandreau, 27 Conn. App. 421, 424, 606 A.2d 52 (1992). A quo warranto action is a civil proceeding. Id.
The parties have stipulated that the plaintiffs are tax payers of the Town of Plainville, and as such, the plaintiffs have standing to bring this action. Further, the office of the Town Council and charter revision commission are statutory public offices. Citations omitted. The plaintiffs have challenged the right of the current Charter Revision Commission to hold their office. Quo warranto is the appropriate action.
The issue presented to this court is as follows: What number of affirmative Town Council votes are necessary to adopt a resolution appointing the defendants as Charter Revision Commission members?
In the present case, the state legislature has set out, in § 7-188 (b),[1] the procedures for initiating the amending of a municipal charter. These procedures permit the amending process to be by the initiation of a resolution by the CT Page 6145 municipality's legislative body (i.e., the Plainville Town Council), the resolution must be adopted by a two-thirds vote of the entire membership of the appointing authority of the municipality; or, by a petition signed by not less than ten per cent (10%) of the electors of such municipality. The petition, upon presentation to the legislative body, must be approved by that body.
Once the Town Council has adopted the initiation process, the next stage is to appoint the individual members of the future Charter Revision Commission. This process is set out in § 7-190. The central issue in this decision implicates only this stage of the process, i.e., § 7-190 and § 7-193.
General Statutes § 7-190[2] sets forth the specifics of a Charter Revision Commission regarding the appointment, membership, duties, report and how the commission is terminated. The statute is silent on the number of votes necessary for the appointment of the Charter Revision Commission members. The only other relevant statute involved in this stage of the process is § 7-193. General Statutes § 7-193 (b)[3] requires that
 [e]very municipality shall have all municipal officers, departments, boards, commissions and agencies which are required by the general statutes or by the charter. . . . All such officers, departments, boards, commissions and agencies shall be elected, appointed and organized in the manner provided by the general statutes, except as otherwise provided by the charter or by ordinances or resolutions adopted pursuant to such charter. Any municipality may, by charter or by ordinances or resolutions adopted pursuant to such charter, alter the method of election, appointment or organization of any or all of such officers, departments, boards, commissions
or agencies, including combining or separating the duties of each, unless specifically prohibited from making such alteration by the constitution or the general statutes. (Emphasis added.)
The court must read both statute provisions together in order to reach its conclusion on this issue. § 7-190 (a) is silent on the number of votes. § 7-193 (b) is similarly silent, except, it specifically reserves the authority of the local municipality to provide by Charter the method of election, CT Page 6146 appointment or organization of any or all commissions. The statute specifically defers to the local authority for the specifics.
Turning to the local authority, the Charter of the Town of Plainville, Chapter III Sec. 5., states in relevant part:
 PROCEDURE . . . The Council shall determine its own rules of procedure not inconsistent with the provisions of this Charter. The presence of five members shall constitute a quorum but no ordinance, resolution or vote, except a vote to adjourn or to fix the time and place of its next meeting, shall be adopted by less than five affirmative votes and the ayes and noes on each vote shall be recorded in the journal. No ordinance or resolution shall be adopted or appointment or removal made except in a meeting of the Council open to the public. (Emphasis added.)
This court is confronted with a vague statute and a broad but specific Charter. The defendants argue that since § 7-188 (b) does not specify the number of votes necessary when the petition method is utilized, the Council needs only a simple majority to appoint charter revision members. The defendants rely on General Statutes § 1-1 (h) for the proposition that only a simple majority is required for the adoption of the petition. General Statutes § 1-1(h) states: "Words purporting to give a joint authority to several persons shall be construed as giving authority to a majority of them." Lastly, the defendants argue that the court must not rely on the language of the Charter because the statute applies. Section 1-1 (h) is not sufficient justification for this court to ignore the very specific language of the Charter.
The plaintiffs' rely on § 7-190, § 7-193, Chapter III § 5 of the Charter and on the past procedures of the Town Council. Although the past procedures are not binding authority, they do illustrate a manner consistent with the plaintiff's interpretation. The resolution of this decision lies in § 5 of the Charter. The legislative intent is clear. Where the Charter requires a procedure different than the statute, or where the statute is silent and the Charter is not, the court must look to the Charter for the proper procedure. CT Page 6147
In Windham Taxpayers Association v. Board of Selectmen,234 Conn. 513 (1995), the court stated:
 The rationale of the act [Home Rule Act § 7-187 et seq.], simply stated, is that issues of local concern are most logically answered locally, pursuant to a home rule charter, exclusive of the provisions of the General Statutes . . . Moreover, home rule legislation was enacted `to enable municipalities to conduct their own business and control their own affairs to the fullest possible extent in their own way . . . upon the principle that the municipality itself knew better what it wanted and needed than did the state at large, and to give that municipality the exclusive privilege and right to enact direct legislation which would carry out and satisfy its wants and needs . . .
 In furtherance of this stated goal of home rule legislation, it has been held that a general law, in order to prevail over a conflicting charter provision of a city having a home rule charter, must pertain to those things of general concern to the people of the state, and it cannot deprive cities of the right to legislate on purely local affairs germane to city purposes. . . . In the numerous jurisdictions having either constitutional or legislative municipal home rule, the overwhelming view accords to the municipality the fullest extent of home rule authority, consistent with law, in matters of local concern . . . Furthermore, in order to achieve the goal of local autonomy over issues of local concern, we do not "apply a strict construction to the home rule legislation, because to do so would stifle local initiative . . ." Norwich v. Housing Authority, supra, 216 Conn. 116. (Internal citations omitted.)
Id., 534-35.
The court in Windham determined the issue of whether Windham's primary legislative body (board of selectmen) could be compelled to hold a referendum on the petition of the town's voters despite the fact that the charter explicitly lists the situations in which a town meeting is required, by holding it was a purely local issue resolved best by the Town. CT Page 6148
The result should be the same in this case. The Town of Plainville clearly intended to govern itself by adopting the Charter. The language of the Charter is clear, as quoted supra. This court need not inquire into the reasons for the 2/3 vote requirement. It is sufficient that the Plainville voters approved the Charter and that this court shall enforce it. There is no contrary language in any of the applicable Home Rule Statutes, nor is § 1-1(h) sufficiently applicable to preempt this local concern.
It is noted that § 7-188 (b), which the defendants rely upon, addresses the initiation of action to amend the Charter, which is an earlier stage, and not the number of votes necessary for the appointment of the members of the charter revision commission. This statute is not at issue in this decision because it is only applicable at the very beginning of the process. Once the Town Council has moved beyond the initiation process, then the second stage begins, which is the appointment of the charter revision commission members. Since § 7-190 and § 7-193
provide the exclusive statutory guidance in the process on how to appoint the members, and since they are silent on the requisite number of votes, the language of the Charter is controlling.
In Caldrello v. Planning Board, 193 Conn. 387, 391,476 A.2d 1063 (1984), the court commented on the attempt to exercise a function authorized by the charter in a manner inconsistent with the provisions of the charter, with the following words: "Where the municipal charter prescribes a particular procedure by which a specific act is to be done or a power is to be performed, that procedure must be followed for the act to be lawful." (Internal citations omitted.)
Lastly, in Heather Lyn Condominium Association, Inc. v.Borough of Jewett City, 17 CONN.L.RPTR. 62, 63 (July 29, 1996) (Hendel, J.), Judge Hendel concluded that where the charter sets out the procedure to be followed, it must be followed. "The law has long been settled in Connecticut that a `city can do no act nor elect any officer unless it is authorized to do so by its charter. If the charter points out a particular way in which any act is to be done . . . then, unless these forms are pursued in the doing of the act . . . the act is not lawful.' Soughey v.Lashar, 71 Conn. 540, 546 (1899)."
III. CONCLUSION: CT Page 6149
The Town of Plainville Charter requires five (5) votes for the adoption of any resolution, ordinance or vote to be legal. The defendants having been appointed by only four (4) affirmative votes, makes their appointment and their actions null and void.
Therefore, by authority of the State of Connecticut and pursuant to Conn. Gen. Stat. § 52-493, it is ordered. that defendants David Underwood, Thomas Arcari, Reade Clemens, Vincent Riera, Joseph Plourde, George Fensick, and Gloria M. Saucier are hereby removed from and ousted and altogether excluded from the office of Charter Revision Commission member and find that any official acts in that office undertaken by defendants since June 14, 1996, are invalid and without the force and effect of law, and that no costs are taxed upon any party. This order is entered nunc pro tunc as of June 14, 1996.
KREMSKI, S.T.R.