In re COTTONWOOD WATER AND SANITATION DISTRICT, DOUGLAS COUNTY, COLORADO, Debtor.

Bankruptcy No. 91–25763 CEM.

United States Bankruptcy Court, D. Colorado.

April 3, 1992.

Charles E. Norton, William P. Ankele, Jr., Ankele, Icenogle, Norton & White, Denver, Colo., for debtor.

John C. Smiley, Lindquist, Vennum & Christensen, Denver, Colo., for creditors Craig A. Cook, et al.

## OPINION AND ORDER ON CREDITOR'S OBJECTION TO ENTRY OF AN ORDER FOR RELIEF

CHARLES E. MATHESON, Chief Judge.

The Debtor in this case, Cottonwood Water and Sanitation District ("Debtor"), is a quasi-municipal entity organized in the State of Colorado. The Debtor raised funds by the issuance of tax advantaged bonds. On November 27, 1991, it filed a petition in this Court pursuant to the provisions of Chapter 9 and, in that petition, the Debtor alleged that it had negotiated in good faith with its creditors but had been unable to obtain the consent of at least a majority in amount of the claims of its creditors concerning the restructuring of its debt.

Notice of the filing of the petition was given as required by the Code and the creditors were afforded an opportunity to object to the entry of an order for relief. Objections were filed by a group of bondholders (the "Objectors"). They argue [1] that the Debtor is not entitled to the benefit of an order for relief because it failed to comply with the provisions of section 109(c)(5)(B) of the Bankruptcy Code.

The Objectors acknowledge that there were prepetition negotiations between the creditors and the Debtor and that such negotiations were done in good faith. However, the Objectors argue that more is required. In particular, they argue that before an entity can be eligible to file a petition under Chapter 9, that entity must have engaged in good faith negotiations concerning the terms of a plan to be proposed pursuant to section 941 of the Code.

Both the origin of the controversy and the resolution of the issue presented start

---

**1.** This Court held a hearing and permitted the parties to file simultaneous briefs. That has been done and it is upon the arguments present- ed at the hearings and in the briefs that this opinion issues.

with an examination of section 109(c). It provides:

> (c) An entity may be a debtor under chapter 9 of this title if and only if such entity—
>
> (1) is a municipality;
>
> (2) is generally authorized to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter;
>
> (3) is insolvent;
>
> (4) desires to effect a plan to adjust such debts; and
>
> (5)(A) has obtained the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;
>
> (B) has negotiated in good faith with creditors and has failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;
>
> (C) is unable to negotiate with creditors because such negotiation is impracticable; or
>
> (D) reasonably believes that a creditor may attempt to obtain a transfer that is avoidable under section 547 of this title.

In isolation, the statutory language encompassed in section 109(c)(5)(B) is inconclusive. It takes on some clarity when it is read in the context of section 109(c) in its totality. In particular, section 109(c)(5) must be read in conjunction with section 109(c)(4).

■ Those two sections, when read together, contemplate a Chapter 9 filing to be for an entity that desires to effect "a plan to adjust such debts ...". Since that "plan" is to be effected by an entity seeking relief under Chapter 9, it is logical to conclude that the "plan" referred to in section 109(c)(4) is a "plan for adjustment of the debtor's debts" within the meaning of section 941 of the Bankruptcy Code.

■ Under the Code it is not enough that a municipal entity desires to effect a plan to adjust its debts. There must be more. In particular, the entity must meet the requirements of section 109(c)(5). The entity must either have obtained the agreement of a majority in amount of the claims of each class that the entity intends to impair under a plan in Chapter 9, or must have negotiated in good faith with creditors and failed to obtain the agreement of creditors holding at least a majority in amount of the claims that the entity intends to impair under a case in Chapter 9.

■ The linkage of sections 109(c)(4) and 109(c)(5) lends support, in this Court's view, to the Objectors' position in this case. The concept is that the entity must desire to effect a "plan" within the meaning of section 941 and must have negotiated in good faith concerning that proposed plan. Nonetheless, the statutory language does not clearly and unambiguously mandate this conclusion. Under these circumstances it is appropriate that the Court look to the legislative history behind the adoption of these provisions. *See, e.g., Union Bank v. Wolas,* —— U.S. ——, 112 S.Ct. 527, 530, 116 L.Ed.2d 514 (1991), *citing U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241–242, 109 S.Ct. 1026, 1030–1031, 103 L.Ed.2d 290 (1989).

To gain an understanding of the present statutory scheme, it is instructive to look at the predecessor legislation starting with the provisions of the Bankruptcy Act as amended by 60 Stat. 410 (1946) and prior to the adoption of Public Law 94–260. Section 83(a) of the Act stated, in pertinent part:

> Any petitioner may file a petition hereunder stating that the petitioner is insolvent or unable to meet its debts as they mature and that it desires to effect a plan for the composition of its debts.... The petition shall state that a plan of composition has been prepared, is filed and submitted with the petition, and that creditors of the petitioner owning not less than 51 per centum in amount of the securities affected by the plan ... have accepted it in writing.

Under that statutory scheme the petitioner had to come to the court with a "plan of composition" which had been approved by the stated percentage of its creditors. It was that "plan of composition" which could then be confirmed only upon acceptance by or on behalf of creditors holding at least two-thirds of the aggregate amount of claims of the classes affected by the proposed plan. Act, § 83(d).

Congress, pursuant to Public Law 91–354, established the Commission on the Bankruptcy Laws of the United States (the "Commission"). That Commission undertook a comprehensive review and study of the bankruptcy laws and, in 1973, filed its Report with Congress which both reported on the Commission's findings and recommendations and also submitted proposed legislation. 93rd Congress, 1st Session, H.D. 93–137, parts I and II (Collier, Bankruptcy, 15th Edition, App. 2, Matthew Bender) (hereafter referred to as "Collier").

The statute proposed by the Commission eliminated the requirements of section 83(a) of the Act concerning the filing of the plan with the original petition and the pre-approval of at least 51 percent of the creditors. Concerning the eligibility for relief the Commission's proposed legislation stated simply:

Section 8–201. Eligibility for Relief. Any public agency or instrumentality or political subdivision is eligible for relief under this chapter if not prohibited from filing a petition by applicable State law. Commission Report, p. 263 (Collier, App. 2).

The Commission's Report stated the reasoning behind this provision as follows:

Present Chapter IX requires that the petitioner obtain the approval of creditors "owning not less than 51 per centum in amount of securities affected by the plan ... in writing" prior to filing a petition. The Commission is of the opinion that this requirement is unwise. It allows the petitioner to submit a *fait accompli* to the judge, thereby creating substantial pressure on the judge to confirm the plan. It also gives those who would seek to depress the market price of the securities of an eligible petitioner for improper purposes an excuse for doing so. Therefore, the Commission recommends that an eligible petitioner be authorized to file a petition without having previously obtained consent. Commission Report, p. 274 (Collier, App. 2).

Following the filing of the Commission Report, Congress engaged in further studies and drafting concerning a comprehensive revision of the bankruptcy law. While those efforts were pending, New York City was suddenly faced with severe economic problems and the prospect of having to seek relief in the bankruptcy court. The magnitude of this problem prompted Congress to expedite the consideration of new bankruptcy legislation to provide more flexible relief to distressed municipalities. H.R. Report, 94–686, p. 10, U.S.Code Cong. & Admin.News 1976, p. 539. That legislation ultimately became Chapter IX of the Bankruptcy Act, as amended by Public Law 94–260.

Concerning eligibility the new provisions of the Act, established by Public Law 94–260, provided as follows:

*Eligibility for Relief.* Any State's political subdivision or public agency or instrumentality, which is generally authorized to file a petition under this chapter by the legislature, or by a governmental officer or organization empowered by State law to authorize the filing of a petition, is eligible for relief under this chapter if it is insolvent or unable to meet its debts as they mature, and desires to effect a plan to adjust its debts. An entity is not eligible for relief under this chapter unless—

(1) it has successfully negotiated a plan of adjustment of its debts with creditors holding at least a majority in amount of the claims of each class which are claims affected by that plan;

(2) it has negotiated in good faith with its creditors and has failed to obtain, with respect to a plan of adjustment of its debts, the agreement of creditors holding at least a majority in amount of the claims of each class which are claims affected by that plan;

(3) such negotiation is impracticable; or

(4) it has a reasonable fear that a creditor may attempt to obtain a preference.

It is also significant that Public Law 94–260 contained a specific provision stating that a " 'plan' means plan filed under section 90; ..." Act, § 81(a). Thus, it is clear from the provisions of Public Law 94–260 that a municipality seeking to file a petition under Chapter IX had to have negotiations concerning the "plan of adjustment" which was to have been the "plan" to be filed under section 90 of the Act.

Congress thereafter continued its work on the new Bankruptcy Code. In the initial bill referred by the House Judiciary Committee to the full House on September 8, 1977, the eligibility requirements for a municipality were stated as follows:

(c) Only a municipality that is generally unable to pay such municipality's debts as such debts mature, and that is not prohibited by State law from proceeding under chapter 9 of this title, may be a debtor under such chapter. H.R. 8200 Union Calendar # 311, p. 327 (Collier, App. 3).

The House Report concerning this provision stated:

§ 109. *Who may be a debtor.*

The second change deletes the four prerequisites to filing found in section 84. The prerequisites require the municipality to have worked out a plan in advance, to have attempted to work out a plan without success, to fear that a creditor will attempt to obtain a preference, or to allege that prior negotiation is impracticable. The loopholes in those prerequisites are larger than the requirements itself. It was a compromise from pre–1976 Chapter IX, under which a municipality could file only if it had worked out an adjustment plan in advance. In the meantime, Chapter IX protection was unavailable. There was some controversy at the time of the enactment of current Chapter IX concerning deletion of the pre-negotiation requirement. It was argued that deletion would lead to a rash

of municipal bankruptcies. The prerequisites now contained in section 84 were inserted to assuage that fear. They are largely cosmetic and precatory, however, and do not offer any significant deterrent to use of Chapter IX. Instead, other factors, such as a general reluctance on the part of any debtor, especially a municipality, to use the bankruptcy laws, operates as a much more effective deterrent against capricious use. H.R. Report No. 595, 95th Congress, 1st Session, pp. 318–319 (1977) (Collier, App. 2).

The bankruptcy legislation being considered by the Senate took another approach. The Senate Bill contained the following provisions concerning eligibility:

§ 906. *Eligibility for relief.*

Any State's political subdivision or public agency or instrumentality, which is generally authorized to file a petition under this chapter by the legislature, or by a governmental officer or organization empowered by State law to authorize the filing of a petition, is eligible for relief under this chapter if it is insolvent or unable to meet its debts as they mature, and desires to effect a plan to adjust its debts. An entity is not eligible for relief under this chapter unless—

(1) it has successfully negotiated a plan of adjustment of its debts with creditors holding at least a majority in amount of the claims of each class which are claims affected by that plan;

(2) it has negotiated in good faith with its creditors and has failed to obtain, with respect to a plan of adjustment of its debts, the agreement of creditors holding at least a majority in amount of the claims of each class which are claims affected by that plan;

(3) such negotiation is impracticable; or

(4) it has a reasonable fear that a creditor may attempt to obtain a preference.

The Senate Report on this proposed bill stated:

Chapter 9, providing for the adjustment of debts of a municipality, was considered at great length by the Con-

gress during 1975–76, primarily because of the New York City fiscal crisis. Both Houses of Congress held extensive hearings on the chapter resulting in Public Law 94–260, which was signed into law on April 8, 1976.

Since that time, there have been no developments in municipal arrangement proceedings to require any new revision of the law. Thus, the bill tracks the provisions of Public Law 94–260 with stylistic changes to conform to the title.

The creditor protection provision, requiring a municipality to attempt a good faith negotiation with its creditors before a petition is filed, is retained. The only deviation from current law is in the area of setoffs where the provisions of chapter 9 conform to the setoff provisions generally applicable to the title. Senate Report # 989, 95th Cong., 2nd Sess., pp. 8–9 (1978) (Collier, App. 3).

The Senate Bill was adopted by the Senate and returned to the House. In the process amendments were made and the language now encompassed in section 109(c) of the Code was inserted. Concerning those provisions, Representative Edwards stated, on the floor of the House:

Chapter 9 of the House amendment represents a compromise between Chapters 9 of the House bill and 9 of the Senate amendment. In most respect this chapter follows current law with respect to the adjustment of debts of a municipality. Stylistic changes and minor substantive revisions have been made in order to conform this chapter with other new chapters of the bankruptcy code.

.    .    .    .    .

... It is intended that a municipality may commence a case in any district in which the municipality is located, as under present law. Section 906 of the Senate amendment has been adopted in substance in section 109(c) of the House amendment. 124 Congressional Record, H 11091 (Daily Ed. September 28, 1978), p. IX–108 (Collier, App. 3).

After the House took action, the bill was again returned to the Senate containing the language now in force as section 109(c) of

the Code. In the Senate debate on the amended bill, Senator DeConcini advised the Senate as follows:

Section 109(c) contains a provision which tracks the Senate amendment as to when a municipality may be a debtor under Chapter 9 of title 11. As under the Bankruptcy Act, State law authorization and prepetition negotiation efforts are required. 124 Congressional Record, H 11864 (Daily Ed. October 6, 1978) p. X–16 (Collier, App. 3).

As the Court earlier observed, the provisions of Public Law 94–260 (Act, § 84(a)) required a municipality seeking to file a petition in the bankruptcy court to first engage in good faith negotiations with its creditors concerning the "plan of adjustment" which, by definition, meant a plan to be proposed under section 90 of the Act. Senator DeConcini's comments to the Senate, both in connection with the original Senate bill and with the amendment as returned by the House, recognized the efforts Congress had made in enacting Public Law 94–260 and confirmed the intentions to reenact those provisions subject only to "stylistic changes...." Most importantly, he confirmed that the "creditor protection provision, requiring a municipality to attempt a good faith negotiation with its creditors before a petition is filed, is retained." Senate Report # 989, 95th Cong., 2nd Sess., pp. 8–9 (1978) (Collier, App. 3).

The Debtor argues that it is significant that section 109(c)(5) of the Code, unlike the provisions of the predecessor section 84(a) of the Act, does not make reference to negotiations "with respect to a plan of adjustment" of the municipality's debts. The Debtor suggests that the elimination of this explicit language indicates an intention by Congress to soften the entrance requirements to the bankruptcy court which had been imposed by Public Law 94–260.

The Court acknowledges the Debtor's arguments. Absent any meaningful legislative history, the arguments would be highly persuasive. The arguments pale, however, in the face of the strong legislative record indicating that section 109(c)(5) was

to have the same effect as its predecessor found in Public Law 94–260.

 In general, the Bankruptcy Code, as remedial legislation, should be broadly construed in order to provide the intended relief. However, municipal bankruptcies involve significant problems which are not encountered in the private sector. Important constitutional issues arise when a municipality enters the bankruptcy arena. Recognizing these problems, Congress consciously sought "to limit accessibility to the bankruptcy court" by municipalities. H.R. Conference Report, 94–938, p. 10, U.S.Code Cong. & Admin.News 1976, p. 539. One way to do so was to require the municipal entity, before rushing to this Court, to first seek to negotiate in good faith concerning the treatment the creditors may be expected to receive under a plan to be filed under section 941 of the Code.

The conditioned entry to this Court which is afforded by section 109(c) recognizes that the negotiating posture of the parties changes once the bankruptcy petition is filed. It is one thing to negotiate when the debtor is being confronted with the pressures of defaults on public debt and the requirement of certifying ever-increasing mill levies in order to provide for the payment of such debt. It is another when the entity is being protected by the stay of section 362 of the Code and the bondholders are being faced with an indeterminate period of nonpayment of their bonds. The "creditor protection" provided by section 109(c)(5), as interpreted by this Court, insures that the creditors have an opportunity to negotiate concerning a plan on a level playing field with the debtor before their rights are further impaired by the provisions of section 362 of the Code.

Having considered the arguments presented by the parties and pursuant to the conclusions stated herein, the Court finds and determines that in order for this Debtor to be entitled to the entry of an order for relief, it must be prepared to show that it engaged in good faith negotiations with its creditors concerning the possible terms of a plan to be effected pursuant to section 941 of the Bankruptcy Code.

A factual issue exists concerning the scope of the negotiations that were in fact undertaken prior to the filing of the petition in this case and an evidentiary hearing to determine this issue is necessary. It is therefore

ORDERED, that a Scheduling Conference will be convened on Wednesday, April 15, 1992, at 9:00 a.m. in Courtroom C, United States Bankruptcy Court, U.S. Custom House, 721 19th Street, Denver, Colorado, 80202–2508, for the purposes of entering such orders as may be necessary to effect a prompt hearing on the issue of the Debtor's right to an order for relief and to set down such matter for hearing.