### In re ELLICOTT SCHOOL BUILDING AUTHORITY, Debtor.

#### Bankruptcy No. 92–20479 DEC.

United States Bankruptcy Court,
D. Colorado.

Dec. 30, 1992.

Ronald M. Martin, Ronald A. Lehmann, Holland & Hart, Colorado Springs, CO, for debtor.

Virginia A. Housum, Dorsey & Whitney, Denver, CO, for Central Bank, N.A.

James C. Ruh, Jensen Byrne Parsons Ruh & Thilton P.C., Denver, CO, for Kemper Securities, Inc.

David M. Brown, Moses, Whittemyer, Harrison & Woodruff, P.C., Boulder, CO, for Aida Brown.

Bruce Kirkpatrick, pro se.

## ORDER DISMISSING CHAPTER 9 PETITION

DONALD E. CORDOVA, Bankruptcy Judge.

THIS MATTER came before the Court on the Chapter 9 petition filed on August 19, 1992, by the Ellicott School Building Authority of El Paso County, Colorado (the "Authority"). On September 23, 1992, the Court issued an Order allowing creditors until November 16, 1992 to object to the entry of an order for relief. The following creditors filed objections to the entry of such an order: Bruce M. Kirkpatrick; Leon G. Mark; Anton M. Diehl, M.D.; Fred and Rosemary Pittroff; Aida Brown; Donald Cooper; Jacqueline Van Outryve; Kemper Securities, Inc., who is the successor in interest to the underwriter of the bond issue and is a bondholder; and Central Bank, N.A., the Indenture Trustee. The petition and objections came on for hearing on December 18, 1992. The Court denied the motion for continuance filed by the Authority, Kemper Securities, and the Indenture Trustee, and received evidence regarding the eligibility of the Authority for Chapter 9 relief. The Court has considered the evidence and makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The Ellicott School Building Authority was created in 1985 pursuant to the Colorado Non–Profit Corporations Act, C.R.S. 7–20–101, et seq. The Authority's stated purpose was to acquire land near the town of Ellicott in El Paso County for the construction of a secondary school, which would then be leased to School District 22 (the "School District").

The Authority financed the construction through the issuance of bonds pursuant to a Mortgage and Indenture of Trust dated May 1, 1988, entered into by the Authority and the Indenture Trustee, Central Bank. Two series of bonds were issued. The first, known as the Current Interest Bonds, were issued in an original aggregate face amount of $2,300,000.00, upon which payments of interest were due on June 1 and December 1 of each year, and upon which

payments of principal were due on December 1 of each year. The second, known as the Capital Appreciation Bonds, were issued in an original aggregate face amount of $6,255,000.00, and are repayable in 1998 by a single balloon payment incorporating principal and accrued interest. A mortgage on the school land and buildings, and an assignment of the May 1, 1988 lease between the Authority and the School District 22 secured the bonds.

The Disclosure Statement dated June 15, 1992 and admitted as Debtor's Exhibit 1 states that the Authority was structured as a non-profit corporation to meet the requirements of the Internal Revenue Service's Revenue Ruling 63–20, "in order to qualify as a governmental or quasi-governmental issuer whose obligations may then qualify as tax exempt under Section 103 of the Tax Code ..." (Debtor's Exhibit 1, page 6) The Disclosure Statement explains that such "63–20 corporations" are formed under state non-profit corporation law so that debt issued by such entities is treated as issued "on behalf of a political subdivision" for purposes of the Tax Code. (Debtor's Exhibit 1, page 6) The Disclosure Statement further indicates that

> [t]he Authority's only activities have been with respect to the School District and have involved the acquisition of property from the School District, the construction thereon of a junior/senior high school facility, the lease of that facility to the School District, and the issuance of bonds to finance that acquisition and construction. The Authority is not a taxing jurisdiction and has no corporate or statutory powers to raise revenues. It has corporate authority to enter into the transactions represented in the acquisition, construction, and financing of the school facility. The only funds or revenues which the Authority has had responsibility for and control over are the proceeds from the 1985 financing. (Authority Debt—First Mortgage Revenue Bond Anticipation Notes, Series 1985, below) and the annual rental payments from the School District under a lease arrangement. (See SCHOOL DISTRICT LEASE)

(Debtor's Exhibit 1, pages 6–7).

However, the Indenture Trustee asserts that the Authority was created and the lease financing structure was employed because the cost of the school facility would have exceeded the mill levy which the School District could impose for capital improvements without the need for a bond election pursuant to C.R.S. § 22–42–102. In December of 1991, the School District's voters defeated a bond proposal which would have authorized a tax mill increase to provide for all or a portion of the funds necessary for the School District to make payments on the lease. (Debtor's Exhibit 1, page 26)

On May 27, 1992, the Authority's attorneys informed the Indenture Trustee of the Authority's intent to default on the payment due June 1, 1992, and stated that the School District was unable to pay the rent owed for the school building. The School District, at the same time, defaulted on its rent payment under the lease. The Indenture Trustee made the June 1, 1992 interest payment on the Current Interest Bonds from a reserve fund set up as part of the original bond issue.

The Authority has not taken formal action to collect the rent obligation due under the lease. The Court notes that the Authority and the School District are represented by the same counsel. In June, 1992, the Authority distributed to the Indenture Trustee and to the bondholders a plan and disclosure statement, which called for a vote by the bondholders on the plan and disclosure statement by August 10, 1992. The Authority organized three public meetings, two in Denver and one in Colorado Springs, at which the proposed restructuring would be explained to the bondholders.

In August, 1992, the Indenture Trustee sought the appointment of a receiver for the Authority. One day before the hearing on the petition for a receiver was set in El Paso County District Court, the Authority filed its Chapter 9 petition.

## CONCLUSIONS OF LAW

11 U.S.C. § 109(c) imposes the following five eligibility criteria for Chapter 9 relief:

An entity may be a debtor under Chapter 9 of this title if and only if such entity—

(1) is a municipality;

(2) is generally authorized to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter;

(3) is insolvent;

(4) desires to effect a plan to adjust such debts, and

(5)(A) has obtained the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;

(B) has negotiated in good faith with creditors and has failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;

(C) is unable to negotiate with creditors because such negotiation is impracticable;  or

(D) reasonably believes that a creditor may attempt to obtain a transfer that is voidable under section 547 of this title.

A debtor must meet each of these requirements to qualify for Chapter 9 relief.

### A. IS THE DEBTOR ELLICOTT SCHOOL BUILDING AUTHORITY A MUNICIPALITY?

"Municipality" is defined by 11 U.S.C. § 101(40) as a "political subdivision or public agency or instrumentality of a State." The Bankruptcy Code does not define the term "public agency or instrumentality", but case law offers some guidance. The Federal District Court for the Southern District of Mississippi has recognized that the standard for determining whether an authority or agency is private or public is whether the agency or authority is subject to control by state or municipal authority. *In re Greene County Hospital*, 59 B.R. 388, 389 (S.D.Miss.1986), *quoting Ex parte York County Natural Gas Authority*, 238 F.Supp. 964, *modified* 352 F.2d 78 (4th Cir.1965), *cert. denied*, 383 U.S. 970, 86 S.Ct. 1277, 16 L.Ed.2d 310 (1966). The Colorado Supreme Court considered a financing structure similar to that of the Debtor in *Gude v. City of Lakewood*, 636 P.2d 691 (Colo.1981). In holding that a debt incurred by a non-profit corporation for the construction of the Lakewood City Hall, which was then leased to the City, did not require a public vote, the Court noted that the City did not have control over the authority, and that the bonds issued did not create public debt. *Id.*, at 636 P.2d 694, 696. The Court also found that a financing scheme under which a non-profit corporation issued bonds to fund the construction of a building which was later leased to a governmental entity did not constitute fraud or an injustice upon the taxpayers, leading the Court to conclude that the financing authority should not be considered a mere alter ego of the municipality, and the debts of the financing authority should not be considered to be the municipality's debts. *Id.*, at 636 P.2d 697.

No governmental entity exercises any right of control over the Ellicott School Building Authority. Neither Colorado statutes nor the articles of incorporation accord any governmental entity the ability to control it. The Authority's own disclosure statement indicates that its articles of incorporation provide that the Authority's directors must be residents of the School District, but they may not be elected officials or employees of the School District. Further, under the reasoning of *Gude v. City of Lakewood, supra,* the Authority cannot be considered an "alter ego" of the School District and thus somehow able to be considered a municipality by virtue of the School District's status as a governmental entity. Therefore, the Court finds that the Authority does not constitute a municipality for purposes of Chapter 9 eligibility under 11 U.S.C. § 109(c).

### B. IS THE AUTHORITY GENERALLY AUTHORIZED TO BE A DEBTOR IN A CHAPTER 9 PROCEEDING?

In *In re Villages at Castle Rock Metropolitan District No. 4*, 145 B.R. 76, 82

(Bankr.D.Colo.1990), Judge Brooks noted that most courts have concluded that 11 U.S.C. § 109(c)(2) does not require a debtor to show express state law authorization, but rather that the debtor possess powers that are consistent with seeking Chapter 9 relief. Examples of such powers include the ability to act for the preservation of the peace and order, to exercise general municipal powers, to borrow money, to enter into contracts, to sue and be sued, and to sell property. *Id.* (citations omitted). The Authority clearly may borrow money, enter into contracts, sue and be sued, and sell property, as any corporation may. However, the special district at issue in *Villages at Castle Rock* had been organized pursuant to C.R.S. § 32–1–1001, which authorizes the creation of special districts. The issue in that case was whether such special districts were generally authorized by Colorado state law to seek Chapter 9 relief. There was no dispute that a special district could be qualified as a municipality. The question arose as to whether the statute's provision giving a special district any powers necessary to carry out the intent (clearly a governmental intent) of the statute was enough to constitute general authorization for Chapter 9 filing, and the Court found that it did. *Id.*

■ In the present case, however, the Debtor was organized as a non-profit corporation under C.R.S. § 7–20–101, a statute which does not purport to create governmental or quasi-governmental entities. The Authority itself admits that it is not a taxing authority, as is a special district, and that it has no power to raise revenues other than through the issuance of bonds. It is no more a governmental entity than is any other corporation, therefore general authorization given to a governmental entity like a special district does not apply to a non-profit corporation like the Authority. Accordingly, the Court finds that the Authority possesses no general authorization to file a Chapter 9 petition.

## C. IS THE AUTHORITY INSOLVENT?

The evidence presented at the hearing did not conclusively demonstrate that the Debtor is unable to pay its debts as they become due, under 11 U.S.C. § 101. To the contrary, the testimony of the Debtor's expert witness indicated that the Authority has the ability, through use of its reserve fund, to make its current debt payments. In addition, the Authority did not show that it would be unable to collect the defaulted rent payment from the School District. It is clear that the School District's taxpayers were unwilling to authorize additional tax expenditures to meet the School District's lease payments. That does not, however, lead inescapably to the conclusion that the Authority is insolvent.

## D. DOES THE AUTHORITY DESIRE TO EFFECT A PLAN?

The Authority has fulfilled this requirement because it is clear that the Authority desires to effect a plan. However, it is also clear that they are unwilling, at least at this juncture, to adopt a flexible approach or agree to any compromise concerning the provisions of that plan.

## E. HAS THE AUTHORITY MET THE REQUIREMENT OF NEGOTIATION?

■ In the recent decision in *In re Cottonwood Water and Sanitation District,* 138 B.R. 973, 979 (Bankr.D.Colo.1992), Judge Matheson noted:

Important constitutional issues arise when a municipality enters the bankruptcy arena. Recognizing these problems, Congress sought to "limit accessibility to the bankruptcy court" by municipalities. H.R. Conference Report, 94–938, p. 10, U.S.Code Cong. & Admin.News 1976, p. 539. One was to do so was to require the municipal entity, before rushing to this Court, to first seek to negotiate in good faith concerning the treatment the creditors may be expected to receive under a plan to be filed under section 941 of the Code.

11 U.S.C. § 109(c)(5) sets forth four options by which a prospective Chapter 9 debtor may fulfill this requirement. First, it may obtain the agreement of creditors holding a majority in amount of claims in each class. Second, it may show that it has negotiated with its creditors in good faith but has failed to obtain their agreement. Third, it

may show that it is unable to negotiate with its creditors because negotiation is impracticable. Fourth, it may demonstrate that it reasonably believe that a creditor may attempt to obtain a preferential transfer.

The Debtor cannot show that it has secured the agreement of its creditors. In addition, the Authority has not alleged that it could not negotiate with its creditors because such negotiation was impracticable. On the contrary, it held public meetings to which all bondholders were invited. Further, it has not asserted that it believed that any of its creditors would try to obtain a preference, rendering negotiation improper. In order to meet the requirements of 11 U.S.C. § 109(c)(5) therefore, the Authority must "be prepared to demonstrate that it engaged in good faith negotiations with its creditors concerning the possible terms of a plan to be effected pursuant to section 941 of the Bankruptcy Code." *In re Cottonwood Sanitation District, supra,* at 138 B.R. 979.

The evidence before the Court shows that the Authority did hold three public meetings at which it "explained" its proposed plan of restructuring to the bondholders. However, the Authority admits that the bondholders were advised that the "economic provisions" of that proposed plan were not negotiable. It is difficult to imagine that any true negotiations could take place in an environment where the substantive terms of a proposal were not open to discussion. Counsel for the Indenture Trustee also indicated that the concerns expressed by the Indenture Trustee regarding the proposed plan had not been addressed before the plan was distributed to the bondholders. Bondholders and counsel who had attended one or more of the public meetings stated that the Authority presented the plan as a "take it or leave it" proposal, and expressed unwillingness to compromise. For these reasons, it appears to the Court that no true good faith negotiations took place. Therefore, the Court finds that the Authority has not met the requirements of 11 U.S.C. § 109(c)(5).

## CONCLUSION AND ORDER

For the above reasons, the Court concludes that the Ellicott School Building Authority has not met the requirements of 11 U.S.C. § 109(c). Because the Court finds that the Authority is not eligible for Chapter 9 relief, it does not reach the issue of the good faith of the filing of the petition, which was raised by the Indenture Trustee. It is, therefore

ORDERED that the above-captioned Chapter 9 proceeding is hereby dismissed due to the ineligibility of the petitioner.