LEO ARCHAMBAULT ET AL. *v.* WATER POLLUTION CONTROL AUTHORITY OF THE TOWN OF WATERFORD ET AL.
(4327)

HULL, DALY and BIELUCH, Js.

Argued December 10, 1986—decision released April 14, 1987

*Lois J. Lawrence,* for the appellants (defendants).
*Francis J. Pavetti,* for the appellees (plaintiffs).

BIELUCH, J. This is an appeal from the trial court's issuance of an order of mandamus requiring the defendants to make all necessary provisions for the furnishing

of sewer service to Country Club Drive in Waterford. The defendants claim that the trial court erred (1) in issuing a writ of mandamus based upon § 16-9 of the Waterford Code of Ordinances (code), (2) in finding that the plaintiffs have a clear legal right to the installation of sewers on Country Club Drive, and (3) in holding that the installation of such sewers was not a discretionary function of the defendant Waterford Water Pollution Control Authority (authority).

The following facts are not in dispute. The plaintiffs are owners of three lots within an approved subdivision on Country Club Drive. They brought this action seeking a writ of mandamus to compel the defendants to make provisions for the furnishing of sewer service to Country Club Drive. The plaintiffs' lots are encircled by Goshen Road, Great Neck Road, Lamphere Road and Shore Road, which are being provided with sewer service.

The authority has a comprehensive plan for the installation of sewer service for the town of Waterford. Phase one of this plan, known as the Pleasure Beach Sewer Project, provides for the installation and distribution of sewers along those streets which encircle Country Club Drive. The plan provides for the eventual extension of this sewer system to Country Club Drive. This extension, however, has been given a low priority by the authority for installation at a future date.

The plaintiffs, by their amended substitute complaint, claimed that § 16-9 of the code required that the Pleasure Beach Sewer Project include the local continguous area, which encompasses their three lots. They alleged that the defendants, therefore, illegally refuse to provide sewer service to their properties.

After a trial to the court, the issues were found for the plaintiffs, whereupon the court ordered "that the defendants make all necessary provisions for the fur-

nishing of sewer service to Country Club Drive as part of the plan and project to furnish sewer service to areas contiguous to Country Club Drive." In its memorandum of decision, the trial court relied upon § 16-9 of the Code, which provides: "Any plans for the development of water and sewerage systems must be consistent with the long-range requirements of the entire town. However, initial installation and distribution systems may be made to service local contiguous areas of the town. *Within such areas, service shall be provided to all developed or subdivided properties.* Emphasis shall be placed on the provision of services to areas with water or sewage problems concerning public or private sanitation and health, with the minimum delay." (Emphasis added.)

The court defined "contiguous" as "neighboring or adjoining," and "area" as "the surface within any given lines," citing Webster, New Universal Unabridged Dictionary (2d Ed). The court found that the four surrounding roads, Goshen Road, Great Neck Road, Lamphere Road and Shore Road, where service is being provided, "form a local contiguous area within which the plaintiffs' properties are located." Since the plaintiffs' properties are part of an approved subdivision, and § 16-9 of the code requires that service shall be provided to all developed or "subdivided properties" within "local contiguous areas," the court concluded that "[s]ection 16-9 is controlling in this action, and the language of this section imposes a mandatory duty upon the defendant to provide service to Country Club Drive. . . . [the] plaintiffs have a clear legal right to the performance of [such] duty by the defendants."[1]

---

[1] In its memorandum of decision the trial court reasoned as follows: "Sections 16-90 [to] 16-92 are general provisions, applicable in a variety of instances given the flexible nature of the word 'extension.' Thus, it is possible to have an extension within a subdivision. But since a subdivision is specifically defined and can only be one thing, then Sec. 16-9 may be treated as an exception to the general provisions relating to sewer extensions. See

The defendants' main argument on appeal alleges that the trial court erroneously concluded that § 16-9 of the Code imposed a mandatory duty upon the defendants to install the sewer service extension to Country Club Drive. The defendants assert that extensions of sewer service are discretionary and must be predicated upon a finding of public need and urgency in accordance with §§ 16-91 and 16-92 of the Code.

Section 16-91 of the Code provides, in relevant part: "Sewer extensions, including individual building sewers from the public sewer to the property line, may be constructed by the town under public contract if, in the opinion of the commission, the number of properties to be served by such extension warrants its cost. Under this arrangement the property owner shall pay for and install the building sewer from the property line to his residence or place of business. . . . The cost of such extensions may be assessed to the benefited property owners." Section 16-92 of that Code further provides in part: "If the commission does not elect to construct a sewer extension under public contract, the property owner, builder or developer must construct the necessary sewer extension, if such extension is approved by the commission in accordance with the requirements of section 16-90. He or they must pay for the entire installation, including all expenses incidental thereto. . . . The cost of sewer extensions thus made shall be absorbed by the developers or the property owners, including all building sewers."

The defendants also claim that under the facts of this case, the trial court's interpretation of § 16-9 of the

[*Budkofsky* v. *Commissioner of Motor Vehicles,* 177 Conn. 588, 592, 419 A.2d 333 (1979)]. Therefore, Secs. 16-90 [to] 16-92 apply in all cases where a sewer extension is involved, except where there is also a subdivision. In that event, Sec. 16-9 applies and service must be provided if the subdivision is within a local contiguous area where a sewer system has been established." (Footnote omitted.)

Code as mandatory violates article first, § 1, of the Connecticut constitution, which forbids the grant of "public emoluments or privileges" for purely private gain. They also maintain that the court's interpretation of § 16-9 as applicable here violates General Statutes § 7-246 (b) which authorizes the authority to prepare and periodically update a water pollution control plan designating and delineating "the boundary of: (1) Areas served by any municipal sewerage system; . . . [and] (3) areas where sewers are to be avoided . . . ."

It is well settled that a municipality has "wide discretion in connection with the decision to supply sewerage." 11 E. McQuillin, Municipal Corporations (3d Ed.) § 31.17. Although this discretion is not absolute, "[t]he date of construction, the nature, capacity, location, number and cost of sewers and drains are matters within the municipal discretion with which the courts will not interfere, unless there appears fraud, oppression or arbitrary action. Accordingly, mandamus or a mandatory injunction will not issue in such case." (Footnotes omitted.) Id. The United States Supreme Court in *Vicksburg* v. *Waterworks Co.*, 202 U.S. 453, 26 S. Ct. 660, 50 L. Ed. 1102 (1906), held that the trial court erred in granting a mandatory injunction requiring the city of Vicksburg to extend a sewer, ruling that the court "had no authority to issue a mandatory injunction requiring the city to construct a sewer, irrespective of the exercise of discretion vested by law in the municipal authorities to determine the practicability of the sewer ordered, the availability of taxation for the purpose, and the like matters; and we think that the exercise of this authority is primarily vested in the municipality and not in the courts." Id., 472.

The plaintiffs argue that under § 16-9, only the decision to create a local contiguous area is discretionary on the part of the defendants, but after that discretion is exercised, as was allegedly done here, "the manda-

tory provisions for service to subdivided properties are operative." The plaintiffs state that the mandatory language of § 16-9, imposes a legal duty upon the town to provide a sewer extension within local contiguous areas and, therefore, strips the municipality of the discretion it is ordinarily afforded.

Assuming that the trial court was correct in finding that Country Club Drive is located in a local contiguous area as defined in § 16-9 of the Code, we disagree that that section mandates the construction of such an extension at public expense. The mandatory provision of § 16-9 which requires that "service shall be provided to all developed or subdivided properties" refers to the development of water and sewage systems generally after "initial installation and distribution systems [have been] made to service local contiguous areas of the town." This mandate has been complied with by virtue of the Authority's existing comprehensive phased sewer program. Under that timetable, a sewer extension for Country Club Drive is scheduled for a future date. The advancement of that time by the court was in error. The initial installation and distribution systems to service local contiguous areas under § 16-9 do not require the initial or simultaneous extension of these systems of sewers to service "developed or subdivided properties" within such area. The Code provides that interior sewers to service private parties shall be extended under other provisions.

In contrast to the general provisions of § 16-9 of the Code, §§ 16-91 and 16-92 specifically apply to sewer extensions. These two sections, which were enacted subsequently to § 16-9, provide the town with discretion as to when and where sewer extensions are to be constructed. They make no special exclusion for sewer extensions to a subdivision within a local contiguous area. Had the town intended to mandate sewer exten-

sions within a local contiguous area simultaneously with initial installation and distribution systems, rather than affording the Authority discretion to regulate such extensions thereafter, it would have excluded such allegedly mandatory interior extensions when it adopted §§ 16-91 and 16-92. See *State* v. *West,* 192 Conn. 488, 494, 472 A.2d 775 (1984) (assumption that legislature cognizant of existing statutes). Having chosen not to do so, we find that the town intended §§ 16-91 and 16-92 to apply to all sewer extensions. As such, the town sought to retain its discretionary authority over where and when to construct sewer extensions. See *Szabo* v. *Beregszazy,* 9 Conn. App. 368, 370, 519 A.2d 81 (1986) (provisions of special applicability take precedence over general provisions).

The trial court, therefore, erred in finding that § 16-9 creates an immediate and mandatory legal duty upon the municipality to install a sewer extension on Country Club Drive. Since the decision to construct a sewer extension is discretionary, a mandamus may not issue. See *Clark* v. *Gibbs,* 184 Conn. 410, 419, 439 A.2d 1060 (1981).

Because we conclude that § 16-9 is not mandatory, we need not determine whether that section violates article first, § 1, of the Connecticut constitution or General Statutes § 7-246 (b).

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.