ALFRED H. WRIGHT, JR., ET AL. *v.* WOODRIDGE LAKE SEWER DISTRICT ET AL.
(14004)

PETERS, C. J., CALLAHAN, GLASS, HULL and BORDEN, Js.

Argued January 15—decision released March 26, 1991

*Wesley W. Horton,* with whom were *Jeffrey A. Hoberman* and, on the brief, *Thomas C. White,* for the appellants-appellees (defendants).

*Michael D. Rybak,* for the appellees-appellants (plaintiffs).

HULL, J. The sole issue in this appeal is whether the trial court mistakenly declared a sewer ordinance invalid in the absence of a sufficient factual record. We conclude that the trial court should not have come to this conclusion without hearing the factual evidence offered by the defendants in support of the validity of the ordinance. We therefore reverse the judgment declaring the sewer ordinance null and void and remand the case for a new trial.

The factual and procedural matrix of the case, as found by the trial court, is not in dispute. The plaintiffs are owners of approximately 8.26 acres of land located on the westerly side of Beach Street in the town of Goshen.[1] This property is located within the boundaries of the named defendant, the Woodridge Lake Sewer District (sewer district), which was established July 7, 1970, in order to provide sanitary sewer service to the Woodridge Lake planned unit development and several other properties, including that of the plaintiffs, located within the boundaries of the sewer district.[2] On July 26, 1971, the defendant Woodridge Lake Sewer District Sewer Authority (sewer authority)[3] was

---

[1] The plaintiffs are Alfred H. Wright, Jr., Patricia D. Wright, A. Edward Wright, Timothy Wright, Christopher Wright, Raynald J. Dupill and Rita M. Dupill.

[2] General Statutes (Rev. to 1966) § 7-325 provides in pertinent part: "Upon the petition of twenty or more voters, as defined by section 7-6, of any town . . . specifying the limits of a proposed district for any or all of the purposes set forth in section 7-326 . . . the selectmen of such town shall call a meeting of the voters residing within such specified limits to act upon such petition . . . . Upon approval of such petition by such meeting, the voters may name the district . . . ."

General Statutes § 7-326 provides in pertinent part: "At such meeting, the voters may establish a district for any or all of the following purposes . . . to construct and maintain . . . drains and sewers . . . ."

[3] General Statutes (Rev. to 1966) § 7-246 provides in pertinent part: "Any municipality may, by ordinance . . . create a new board or commission to be designated, as the sewer authority for such municipality."

created, which thereafter adopted the Woodridge Lake Sewer District Sewer Ordinance (ordinance) for the purpose of "regulating the use of public sewers and drains, the installation of and connection of building sewers and the discharge of waters and wastes into the public sewer system: and providing penalties for violations thereof." The ordinance originally specified that no person "shall uncover, make any connections with or opening into, use, alter, or disturb any public sewer or appurtenance thereof without first obtaining a written permit from the Authority." On November 18, 1981, the ordinance was amended to provide that "[n]otwithstanding any other provisions of this Ordinance, [connection] permits hereunder shall be issued only under circumstances such that there shall be no more than (1) dwelling unit equivalent per acre or per smaller lot of record as may exist as of the date of this provision of this Ordinance." The amendment defines "dwelling unit equivalent" as "any use reasonably expected, consistent with good engineering practice, to generate less than 200 gallons of sewage per day."

After the effective date of the amended ordinance, the plaintiffs applied to the sewer authority for a permit to connect their property to the sewer district's sewerage system in order to service forty-one proposed condominium units to be constructed on their property. Following a meeting, the sewer authority denied the plaintiffs' application for failure to comply with the ordinance requirement that there be no more than one dwelling unit equivalent per acre lot in order to obtain a sewer connection permit.

The plaintiffs brought this action in the Superior Court for a judgment declaring the ordinance invalid, claiming that the ordinance was: (1) unconstitutional on its face and as applied to the plaintiffs; (2) an unlaw-

ful, de facto exercise of planning and zoning authority;[4] and (3) an illegal, arbitrary and exclusionary land use regulation. The plaintiffs also sought injunctive relief in conjunction with their claim for a declaration that the sewer authority had abused its administrative discretion by denying the plaintiffs' application.

At trial, the court ruled that it would only consider evidence concerning the status of the plaintiffs' ownership of the property involved and the question of their aggrievement. The defendants objected to this ruling, asserting that they had expert witnesses available to testify as to the claims of fact set forth in their preliminary memorandum of law, specifically, the design and capacity of the sewer district's sewer system and the underlying purpose of the sewer ordinance. Nevertheless, the court declined to hear the evidence, reasoning that the defendants' justification for enacting the sewer ordinance was not an issue in the case. Thereafter, relying on the principle that the authority to zone is vested exclusively in the zoning commission, the trial court ruled that "[t]he Ordinance as amended, constitutes unlawful de facto zoning by imposing a limit on sewer connection permits to not more than one (1) dwelling unit equivalent per acre, or smaller lot of record; by limiting the density on [the] plaintiffs' property to eight (8) dwelling units; and by imposing such restrictions on lot size and density in the absence of district zoning authority and after the adoption of zoning by the Town of Goshen." The court then declared the sewer ordinance null and void but declined to rule on the plaintiffs' request for injunctive relief. The defendants appealed to the Appellate Court and the plaintiffs filed a cross appeal. We subsequently transferred the appeals to ourselves pursuant to Practice Book § 4023.

[4] It is undisputed that the sewer district did not adopt zoning authority pursuant to General Statutes § 7-326, although it was within its power at the time that the sewer ordinance was amended to do so.

The defendants claim that the trial court erred by declaring the sewer ordinance invalid without hearing the defendants' proffered evidence. The plaintiffs claim that it was not necessary to hear the proposed evidence in order to conclude that the ordinance constituted unlawful de facto zoning.[5] We agree with the defendants.

" ' "It is settled law that as a creation of the state, a municipality has no inherent powers of its own. *City Council* v. *Hall,* 180 Conn. 243, 248, 429 A.2d 481 (1980); *Pepin* v. *Danbury,* 171 Conn. 74, 83, 368 A.2d 88 (1976); *New Haven Water Co.* v. *New Haven,* 152 Conn. 563, 566, 210 A.2d 449 (1965); *State ex rel. Coe* v. *Fyler,* 48 Conn. 145, 158 (1880)." *New Haven Commission on Equal Opportunities* v. *Yale University,* 183 Conn. 495, 499, 439 A.2d 404 (1981). A municipality has only those powers that have been expressly granted to it by the state or that are necessary for it to discharge its duties and to carry out its objects and purposes. *City Council* v. *Hall,* supra, 248.' " *Norwich* v. *Housing Authority,* 216 Conn. 112, 123, 579 A.2d 50 (1990). This principle applies with equal force to quasi-municipal corporations. *Stroiney* v. *Crescent Lake Tax District,* 205 Conn. 290, 294, 533 A.2d 208 (1987); *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* 179 Conn. 541, 547, 427 A.2d 822 (1980).

A sewer district established under chapter 105 of the General Statutes is a quasi-municipal corporation; see *Stroiney* v. *Crescent Lake Tax District,* supra; *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* supra;

---

[5] The plaintiffs claim, as alternate grounds for affirming the judgment, that the trial court erred in failing to conclude that the sewer ordinance: (1) on its face and as applied, denied the plaintiffs the use of their property in violation of the due process clauses of the federal and state constitutions; and (2) constituted illegal, arbitrary and exclusionary land use regulation. In their cross appeal, the plaintiffs claim that the trial court should have granted their request for injunctive relief.

*Larkin* v. *Bontatibus,* 145 Conn. 570, 576, 145 A.2d 133 (1958); 1 E. McQuillin, Municipal Corporations (3d Ed.) § 2.29; which, through its sewer authority, has the power to acquire, construct, maintain, supervise, manage and operate a sewer system and "perform any act pertinent to the collection, transportation and disposal of sewage." General Statutes § 7-245;[6] see General Statutes §§ 7-246 (c), 7-247.[7] The "power to 'construct, establish and maintain drains and sewers' includes power to make reasonable regulations for tapping and connecting with the sewers." 11 E. McQuillin, supra, § 31.30, p. 262. Furthermore, "a municipality has 'wide discretion in connection with the decision to supply sewerage.' 11 E. McQuillin, [supra,] § 31.17." *Archambault* v. *Water Pollution Control Authority,* 10 Conn. App. 440, 444, 523 A.2d 931 (1987).

Municipal regulations are upheld as a legitimate exercise of the police power provided that they are rationally related to the public health, safety and welfare and operate in a manner that is not arbitrary, oppressive or fraudulent. See *Lizotte* v. *Conservation Commission,*

---

[6] General Statutes § 7-245 provides that " 'municipality' means any . . . sewer district . . . [and] 'operate a sewerage system' means own, use, equip, reequip, repair, maintain, supervise, manage, operate and perform any act pertinent to the collection, transportation and disposal of sewage . . . ."

[7] General Statutes § 7-246 (c) provides in pertinent part: "Any municipal sewer authority in existence prior to October 1, 1978, shall be deemed to be the water pollution control authority of such municipality unless the legislative body of the municipality, by ordinance, determines otherwise, and such water pollution control authority shall be deemed the successor to such sewer authority for all of the purposes of this chapter." The Woodridge Lake Sewer District Sewer Authority was established on July 17, 1970.

General Statutes § 7-247 provides in pertinent part: "Any municipality by its water pollution control authority may acquire, construct and operate a sewerage system . . . ."

216 Conn. 320, 336, 579 A.2d 1044 (1990); *Blue Sky Bar, Inc.* v. *Stratford,* 203 Conn. 14, 20, 523 A.2d 467 (1987); *Hartland* v. *Jensen's, Inc.,* 146 Conn. 697, 703, 155 A.2d 754 (1959); *Archambault* v. *Water Pollution Control Authority,* supra. Whether municipal regulations meet the test of legitimacy must be determined in the light of the circumstances shown to exist in a particular case. See *Helbig* v. *Zoning Commission,* 185 Conn. 294, 304, 440 A.2d 940 (1981); *Bartlett* v. *Zoning Commission,* 161 Conn. 24, 31, 282 A.2d 907 (1971).

In response to the plaintiffs' claim that the sewer ordinance constitutes unlawful de facto zoning, the defendants claim that the ordinance is a lawful exercise of their power to operate and maintain a sewerage system. At trial, in support of this claim, the defendants sought to present expert testimony that: (1) the purpose of the amended sewer ordinance was to ensure fair availability of the sewer system to all properties; and (2) the restrictions in the amended sewer ordinance appropriately reflected the design, functioning, capacity and operation of the Woodridge Lake Sewer District Treatment Plant and sewer system.[8] This evidence is relevant to the issue of whether the sewer ordinance, as amended, is rationally related to the operation and maintenance of a sewerage system and, thus, a legitimate exercise of the police power. We conclude, therefore, that the trial court should not have adjudicated the validity of the sewer ordinance without first considering the evidence offered by the defendants.[9]

---

[8] The plaintiffs also sought to present evidence regarding the design, function, capacity and operation of the sewer plant and system. In addition, they were prepared to offer expert testimony that the sewer ordinance restricted the use of their property and that the denial of their application for a sewer connection permit was arbitrary and unreasonable.

[9] Because the evidence offered by the parties at trial would also be relevant in adjudicating the issues presented by the plaintiffs' alternate grounds for affirmance; see footnote 5, supra; we do not reach these issues. We

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.

also need not consider the plaintiffs' cross appeal challenging the trial court's denial of their request for injunctive relief, since it is premature in light of this opinion.