## In re WESTPORT TRANSIT DISTRICT, Debtor.

### Bankruptcy No. 2–92–00404.

United States Bankruptcy Court, D. Connecticut.

March 16, 1994.

---

David S. Golub, Tanina Rostain and Jonathan M. Levine, Silver Golub & Teitell, Stamford, CT, for Westport Taxi Service, Inc.

William J. Kupinse, Jr. and John H. Kane, Goldstein and Peck, P.C., Bridgeport, CT, for debtor Westport Transit Dist.

## RULING ON OBJECTION TO AND MOTION TO DISMISS THE PETITION

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

The Westport Transit District ("Westport Transit"), on January 7, 1992, sought relief under Chapter 9 of the Bankruptcy Code, apparently in response to having a judgment for $1,048,260 entered against it in a state-court antitrust action brought by Westport Taxi Service, Inc. ("Westport Taxi"). Westport Taxi has objected to the bankruptcy petition and moved for its dismissal pursuant to Code § 921(c).[1] Westport Taxi requested dismissal because it alleged Westport Transit (a) is not a municipality, § 109(c)(1); (b) is not generally authorized to file a Chapter 9 petition, § 109(c)(2); (c) is not insolvent, § 109(c)(3); and (d) has not filed the petition in good faith, § 921(c). Pursuant to a scheduling order entered by the court, the parties have filed briefs solely on whether Westport Transit qualifies as a municipality generally authorized to be a debtor under § 109(c)(1) and (2). For the reasons that follow, the court concludes that the petition must be dismissed because Westport Transit is not generally authorized by state law to be a Chapter 9 debtor.

### II.

#### BACKGROUND

The Town of Westport, a municipality located in Fairfield County, Connecticut, formed Westport Transit in 1969 as a transit district to serve the transportation needs of Westport's residents. Westport Taxi operat-

---

1. Section 921(c) provides:

   After any objection to the petition, the court, after notice and a hearing, may dismiss the petition if the debtor did not file the petition in good faith or if the petition does not meet the requirements of this title.

   11 U.S.C. § 921(c).

ed, at all relevant times, a private taxi service in and around the Westport area. In 1979 Westport Taxi filed suit in state court against Westport Transit alleging unlawful antitrust practices by Westport Transit. After a bench trial, the state court concluded that Westport Transit engaged in predatory pricing behavior in an attempt to drive Westport Taxi out of operation. The court, on June 28, 1991, entered judgment against Westport Transit for $1,048,260 for the resulting damages sustained by Westport Taxi. In addition to filing a state-court appeal of the judgment, Westport Transit filed the present Chapter 9 petition.

## III.

## DISCUSSION

### A.

■ Chapter 9 is the sole avenue of relief for municipalities under the Bankruptcy Code. *See* 4 *Collier on Bankruptcy* ¶ 900.03, at 900–17 (Lawrence P. King., ed., 15th ed. 1993). Code § 109(c)(1) and (2) provide, in part, who may be a debtor under Chapter 9:

An entity may be a debtor under chapter 9 of this title if and only if such entity—

(1) is a municipality;

(2) is generally authorized to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter....

11 U.S.C. § 109(c)(1), (2).

■ Westport Taxi initially contends that under Connecticut law, Westport Transit is not an agency or instrumentality of the State but exists only as an agency or instrumentality of the Town of Westport. This contention, however, even if true, is not conclusive of whether Westport Transit qualifies as a municipality under § 109(c)(1).

■ The Bankruptcy Code defines "municipality" as a "political subdivision or public agency or instrumentality of a State." 11 U.S.C. § 101(40). Westport Taxi apparently

interprets the final modifying phrase "of a State" to signify that a public agency must be one of the state to be considered a municipality under the Code, and asserts that since Westport Transit is an agency of the Town of Westport, it is not a qualifying municipality under §§ 101(40) and 109(c)(1) of the Code. Besides being a questionable conclusion, *see, e.g., Gordon v. Bridgeport Hous. Auth.*, 208 Conn. 161, 186, 544 A.2d 1185 (1988) ("'A municipal authority created under a municipal authorities statute has been regarded as a corporate agency of the state and not a creature, agent or representative of the municipality organizing it.'"), bankruptcy court decisions considering this issue find that a public agency is a municipality for the purposes of § 109(c)(1) if it "'is subject to control by public authority, state *or* municipal.'" *In re Greene County Hosp.*, 59 B.R. 388, 389 (S.D.Miss.1986) (emphasis added) (quoting *Ex parte York County Natural Gas Auth.*, 238 F.Supp. 964, 976 (W.D.S.C.), *modified by* 352 F.2d 78 (4th Cir.1965), *cert. denied*, 383 U.S. 970, 86 S.Ct. 1277, 16 L.Ed.2d 310 (1966)); *see also In re Ellicott Sch. Build. Auth.*, 150 ·B.R. 261, 264 (Bankr.D.Colo.1992) (following the *In re Greene County Hosp.* holding that an entity is a public agency if it is subject to control by state or municipal authority, but finding that "[n]o governmental entity exercises any right of control over the Ellicott School Building Authority[ ]"). The phrase "of a State" in § 101(40) under these holdings, does not signify that only a public agency "of the State of Connecticut," as opposed to a public agency "of the Town of Westport," may be a Chapter 9 debtor.

■ Furthermore, as suggested in *Norwich v. Hous. Auth.*, 216 Conn. 112, 122, 579 A.2d 50 (1990), governmental entities created by Connecticut municipalities pursuant to state enabling statutes are "hybrid organizations bearing many strong aspects of local authority and equally strong aspects of state authority." The Town of Westport created Westport Transit pursuant to Connecticut transit-district enabling statutes. *See* Conn. Gen.Stat. Ch. 103a.[2] Upon its creation, a

2. Section 7–273b(a) provides:

It is hereby found and declared that the development, maintenance and improvement

transit district becomes "a body corporate and politic,"[3] with its board of directors appointed by the member towns, cities, or boroughs. *See id.* § 7–273c. Upon written notice to the state department of transportation and others, the district assumes all powers of the department of transportation within the district, including the establishment of passenger fares, the regulation of existing transit systems, and the right to use revenues to subsidize transit systems operating under private ownership. *Id.* § 7–273d. The district is authorized to establish a new transit system or acquire an existing system and is granted the power of eminent domain. *Id.* § 7–273e. The district may issue bonds and notes and, under certain conditions and restrictions, may obtain state guaranties of payment. *Id.* § 7–273g. Westport Transit, taking into account these powers and purposes, qualifies as a "hybrid" public agency of both the state and the town.

For all of the foregoing reasons, the court concludes that Westport Transit is a municipality for the purposes of § 109(c)(1). *Cf. also* 2 *Collier on Bankruptcy, supra,* ¶ 101.-40, at 101–124 ("The term 'municipalities' does not include the District of Columbia or any territories of the United States.").

## B.

■ A more significant question is whether Westport Transit has been authorized by state law to be a Chapter 9 debtor. Section 109(c)(2) requires an entity to be "generally authorized" under state law to file a bankruptcy petition. Courts have construed this provision to require some affirmative indica-

tion by applicable state law of a municipality's authority to file a bankruptcy petition. *See In re City of Bridgeport,* 128 B.R. 688, 696 (Bankr.D.Conn.1991) (Section 109(c)(2) requires "some affirmative authorization" by the State for a municipality to be generally authorized to file a Chapter 9 petition.); *In re Carroll Township Auth.,* 119 B.R. 61, 63 (Bankr.W.D.Pa.1990) ("[S]ection 109(c)(2) requires affirmative action from the State in allowing an entity to become a Chapter 9 debtor.").

■ This authority need not, however, be an express grant of authority to file under Chapter 9 or to work out its debts with creditors. *See* 2 *Collier on Bankruptcy, supra,* ¶ 109.03, at 109–19 (Section 109(c)(2) "demands only general authorization rather than specific authorization of each particular municipality seeking to benefit from chapter 9."). Rather, state law only needs to give "some indication" that the entity is authorized to be a Chapter 9 debtor. *In re Pleasant View Util. Dist.,* 24 B.R. 632, 638 (Bankr. M.D.Tenn.1982) (concluding that "the term 'generally authorized' as used in § 109(c) means only that the state should give some indication that the municipality has the necessary power to seek relief under the federal bankruptcy law."); *see also* Eric W. Lam, *Municipal Bankruptcy: The Problem with Chapter 9 Eligibility,* 22 Ariz.St.L.J. 625, 632 (1990) (discussing how the phrase "generally authorized" was the result of a legislative compromise between the Senate's "specifically authorized" version and the House's more inclusive "not prohibited" version).

of systems for the transportation of people and goods within the state, and particularly within the metropolitan areas of the state, by rail, motor carrier or other means of land transportation are essential for the welfare of the citizens of the state and for the development of the state's resources, commerce and industry, that the development and maintenance of modern, efficient and adequate systems of mass transportation are required; that private enterprise lacks financial or other resources necessary to provide such systems of mass transportation; and, that the formation and operation of transit districts with the powers enumerated in this chapter are thus a public necessity.
Conn.Gen.Stat. § 7–273b(a).

**3.** Section 7–273b(d) provides:

Any town, city or borough may, by itself or in cooperation with one or more other municipalities, form a transit district, in the manner and for the purposes hereinafter provided. The district shall be a body corporate and politic, and may sue and be sued, plead and be impleaded, hold and convey real or personal estate, adopt and alter a common seal, borrow on the faith and credit of the district for its purposes under this chapter, and, in addition to the powers authorized by this chapter or any other chapter of the general statutes, shall have such other powers as are necessary or incident to carrying out the powers and purposes of this chapter.
Conn.Gen.Stat. § 7–273b(d).

Bankruptcy courts construing the legal structure of state governments in Tennessee, Missouri, and Colorado have found general authority to file a Chapter 9 petition in statutes granting to the entity (1) power to institute judicial actions; (2) management and control over its finances; and (3) other rights and powers "necessary and convenient" to exercising its stated authority. *See, e.g., In re Pleasant View Util. Dist.*, 24 B.R. at 638–39; *In re City of Wellston*, 43 B.R. 348, 350 (Bankr.E.D.Mo.1984); *In re Villages at Castle Rock Metro. Dist. No. 4*, 145 B.R. 76 (Bankr.D.Colo.1990).

■ In Connecticut, the legal authority of municipalities is strictly limited to express grants of authority by the legislature and the concomitant powers necessary to exercise that authority. *See, e.g., Wright v. Woodridge Lake Sewer Dist.*, 218 Conn. 144, 148, 588 A.2d 176 (1991) ("It is settled law that as a creation of the state, a municipality has no inherent powers of its own. A municipality has only those powers that have been expressly granted to it by the state or that are necessary for it to discharge its duties and to carry out its objects and purposes.") (citations and internal quotations omitted); *Norwich v. Housing Auth.*, 216 Conn. at 123, 579 A.2d 50 ("In determining whether the municipality had the authority to adopt [an ordinance], then, 'we do not search for a statutory prohibition against such an enactment; rather we must search for statutory authority for the enactment.'"); *New Haven Comm'n on Equal Opportunities v. Yale Univ.*, 183 Conn. 495, 498–500, 439 A.2d 404 (1981) (holding that "the express enumeration of powers granted to municipalities constitutes an exclusion of all other powers not expressly delegated" and finding that the City of New Haven had no authority to create a commission to resolve employment discrimination complaints); *City Council v. Hall*, 180 Conn. 243, 250–52, 429 A.2d 481 (1980) (Home Rule Act did not authorize municipalities to confer subpoena power on its governing body.); *Old Colony Gardens, Inc. v. City of Stamford*, 147 Conn. 60, 64, 156 A.2d 515 (1959) (notwithstanding that imposing rent controls is an exercise of police power, state's grant to city of power to protect the public health, safety and welfare

does not include authority to impose rent controls); *Fahy v. Town of Trumbull*, 22 Conn.Supp. 105, 109–10, 163 A.2d 574 (Super.Ct.1960) (Town ordinance seeking to prohibit political activity of members of civil service board and personnel appeals board held invalid as unauthorized. "[T]he test of [the] right [of municipal corporations] by implication to exercise any particular power is the necessity of such power, not its convenience.... '[I]f there is a reasonable doubt as to the existence of an implied power in a municipality, it does not exist.'") (quoting *Borough of Wallingford v. Town of Wallingford*, 15 Conn.Supp. 344, 347 (Super.Ct.1948)).

■ The limited legal independence of municipalities in Connecticut also governs the status of quasi-municipal corporations such as transit districts. *Woodridge Lake Sewer Dist.*, 218 Conn. at 148, 588 A.2d 176 (The principal of limited municipal governance "applies with equal force to quasi-municipal corporations[ ]" created by municipal authorities acts. A sewer district is a quasi-municipal corporation.); *Stroiney v. Crescent Lake Tax Dist.*, 205 Conn. 290, 294, 533 A.2d 208 (1987) ("Quasi-municipal corporations are governed by the law applicable to municipal corporations.").

Conn.Gen.Stat. § 7–273b(d) grants the following general powers to transit districts:

> The district ... may sue and be sued, plead and be impleaded, hold and convey real or personal estate, adopt and alter a common seal, borrow on the faith and credit of the district for its purposes under this chapter, and, in addition to the powers authorized by this chapter or any other chapter of the general statutes, shall have such other powers as are necessary or incident to carrying out the powers and purposes of this chapter.

Conn.Gen.Stat. § 7–273b(d). Westport Transit agrees that there is no express authority for it to file a Chapter 9 petition, but contends that it is a power necessary or incident to the express powers granted to transit districts. Westport Taxi contends that, when contrasted with the comparable statutory provision for municipalities, a tran-

sit district's limited powers do not include filing a bankruptcy petition.

The court concludes that the transit-district enabling statutes cannot be interpreted as generally authorizing Westport Transit to file a Chapter 9 petition. None of the district's enumerated powers can be read as including the authority to be a debtor, and given Connecticut municipal governance law, filing a Chapter 9 petition is not a power necessarily implied for Westport Transit to discharge its stated powers. The authority given to Westport Transit to sue and be sued does not include the filing of a Chapter 9 petition. This power only allows Westport Transit's directors to sue parties having liability to the transit district and to be sued by parties asserting claims against the district. *See In re Carroll Township Auth.,* 119 B.R. at 63 (finding that a municipal authority's power to sue and be sued did not authorize it to be a debtor). The holding in *City of Bridgeport* that the City of Bridgeport was authorized to file a Chapter 9 case may be distinguished from the present matter in that the sue and be sued provision in the Home Rule Act is more expansive inasmuch as it gives Connecticut municipalities authority to institute proceedings in any court of competent jurisdiction.[4] Judge Shiff, in *City of Bridgeport,* also relied heavily on the legislature's grant of Home Rule powers to Connecticut municipalities, powers which do not apply to transit districts. 128 B.R. at 696–98. *Cf. also Norwich v. Hous. Auth.,* 216 Conn. at 116–18, 579 A.2d 50 (holding that enumerated powers granted by home rule legislation should not be strictly construed: "If ever a statutory plan cried out for an expansive construction favoring local municipal authority over its own affairs, it is the Home Rule Act.").

## IV.

### CONCLUSION

The court concludes that Westport Transit is not generally authorized by the state legis-

lation under which it was created to be a debtor under Chapter 9. Any other conclusion would impermissibly transform § 109(c)(2)'s "generally authorized" language into the "not prohibited" language rejected by Congress when it enacted the Bankruptcy Code. Westport Taxi's objection to the petition, accordingly, is sustained, and the petition shall therefore be dismissed pursuant to Code § 921(c). It is

SO ORDERED.

---

4. Section 7–148(c) provides:

Any municipality shall have the power to do any of the following, in addition to all powers granted to municipalities under the constitution and general statutes:

(1)(A) Contract and be contracted with, sue and be sued, and institute, prosecute, maintain and defend any action or proceeding in any court of competent jurisdiction.
Conn.Gen.Stat. § 7–148(c)(1)(A).