BRT GENERAL CORPORATION ET AL. *v.* WATER
POLLUTION CONTROL AUTHORITY OF THE
TOWN OF MIDDLEBURY
(SC 16927)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued March 11—officially released July 29, 2003

*Neil R. Marcus*, with whom was *Julia B. Morris*, for the appellants (plaintiffs).

*Maureen Danehy Cox*, with whom, on the brief, was *Kenneth J. Pocius*, for the appellee (defendant).

*Opinion*

BORDEN, J. The principal issue in this appeal[1] is whether the trial court lacked subject matter jurisdic-

---

[1] The plaintiffs appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

tion over the plaintiffs' mandamus action because they had failed to exhaust the administrative remedies provided in General Statutes §§ 22a-430 (f),[2] 22a-436[3] and

[2] General Statutes § 22a-430 (f) provides: "The commissioner [of environmental protection] may, by regulation, establish and define categories of discharges, including but not limited to, residential swimming pools, small community sewerage systems, household and small commercial disposal systems and clean water discharges, for which he may delegate authority to any other state agency, water pollution control authority, municipal building official or municipal or district director of health to issue permits or approvals in accordance with this section or to issue orders pursuant to sections 22a-428, 22a-431, 22a-432 and 22a-436. In establishing such categories the commissioner shall consider (1) whether each discharge in such category, because of size and character, is likely to cause significant pollution to the waters of the state; (2) whether knowledge and training concerning disposal systems for each discharge in such category is within the expertise of such agency, authority, official or director; (3) whether the source of each discharge in such category is likely to be within the jurisdiction of such agency, authority, official or director for other matters. The commissioner shall establish, by regulation, minimum requirements for disposal systems for discharges in such categories. *Any permit denied or order issued by any such agency, authority, official or director shall be subject to hearing and appeal in the manner provided in sections 22a-436 and 22a-437.* Any permit granted by any such agency, authority, official or director shall thereafter be deemed equivalent to a permit issued under subsection (b) of this section." (Emphasis added.)

[3] General Statutes § 22a-436 provides: "Each order to abate pollution issued under section 22a-428 or 22a-431 or decision under subsection (b) or (c) of section 22a-430 shall be sent by certified mail, return receipt requested, to the subject of such order or decision and shall be deemed issued upon deposit in the mail. Any person who or municipality which is aggrieved by any such order or decision to deny an application or, in the case of a permit issued pursuant to the federal Water Pollution Control Act, any decision without prior hearing under subsection (b) or (c) of section 22a-430 may, within thirty days from the date such order or decision is sent, request a hearing before the commissioner. The commissioner shall not grant any request for a hearing at any time thereafter. After such hearing, the commissioner shall consider the facts presented to him by the person or municipality, including, but not limited to, technological feasibility, shall consider the rebuttal or other evidence presented to or by him, and shall then revise and resubmit the order to the person or municipality, or inform the person or municipality that the previous order has been affirmed and remains in effect. *The request for a hearing as provided for in this section or a decision under subsection (b) or (c) of section 22a-430 made after a public hearing shall be a condition precedent to the taking of an appeal by the person or municipality under the provisions of section 22a-437.*

22a-437.[4] The plaintiffs, BRT General Corporation and Forest Walk, LLC,[5] appeal from the judgment of the trial court, which had denied their application for a writ of mandamus to direct the defendant, the water pollution control authority of the town of Middlebury, to consider their application to "connect"[6] to the town's sewer system. The defendant claims that the trial court lacked subject matter jurisdiction over this mandamus

The commissioner may, after the hearing provided for in this section, or at any time after the issuance of his order, modify such order by agreement or extend the time schedule therefor if he deems such modification or extension advisable or necessary, and any such modification or extension shall be deemed to be a revision of an existing order and shall not constitute a new order. There shall be no hearing subsequent to or any appeal from any such modification or extension." (Emphasis added.)

[4] General Statutes § 22a-437 provides: "(a) Any person who or municipality which is aggrieved by a decision under subsection (b) or (c) of section 22a-430 or by any order of the commissioner other than an order under section 22a-6b, to abate pollution may, after a hearing by the commissioner as provided for in section 22a-436 or subsection (b) or (c) of section 22a-430, appeal from the final determination of the commissioner based on such hearing to the Superior Court as provided in chapter 54. Such appeal shall have precedence in the order of trial as provided in section 52-192.

"(b) Notwithstanding the provisions of any other statute to the contrary, any appeal by a person or municipality aggrieved by an order of the commissioner to abate pollution, other than an order under section 22a-6b, or by a decision under subsection (b) of section 22a-430, shall be pursuant to this section."

[5] BRT General Corporation and Forest Walk, LLC, are the contract purchasers of the property involved in this appeal, and they have referred to themselves collectively in their brief as the plaintiff. As the defendant notes in its brief, however, BRT General Corporation and Forest Walk, LLC, are separate legal entities, and Forest Walk, LLC, is the sole assignee of all of the property at issue in this appeal. As a result, Forest Walk, LLC, appears to be the only plaintiff with standing to raise any claims on appeal. See *Webster Bank* v. *Zak*, 259 Conn. 766, 774, 792 A.2d 66 (2002) ("a party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim"). Therefore, hereafter we refer to Forest Walk, LLC, exclusively, as the plaintiff.

[6] Although the plaintiff entitled its application an application to "connect" to the town sewer system, the accuracy of that label is a contested issue in this appeal. Specifically, the trial court found, and the defendant argues, that the application was for an "extension" of the sewer system, rather than an application to "connect" with the sewer system, within the meaning of the regulations of the defendant.

action because the plaintiff had failed to exhaust its administrative remedies. With the exception of one of the determinations of the trial court that the plaintiff challenges on appeal, we agree with the defendant. Accordingly, we reverse the judgment of the trial court as to those determinations, and we remand the case to that court with direction to dismiss the related counts of the plaintiff's action. We affirm the judgment of the trial court with respect to the one determination for which that court had subject matter jurisdiction.

The following facts and procedural history are undisputed. Prior to the events at issue in this appeal, the town of Middlebury (town) created the defendant as its water pollution control authority pursuant to General Statutes § 7-246.[7] Under orders from the state depart-

---

[7] General Statutes § 7-246 provides: "(a) Any municipality may, by ordinance, designate its legislative body, except where the legislative body is the town meeting, or any existing board or commission, or create a new board or commission to be designated, as the water pollution control authority for such municipality. Any municipality located within the district of a regional water authority or regional sewer district established under an act of the General Assembly may designate such water authority or sewer district as the water pollution control authority for such municipality, with all of the powers set forth in this chapter for water pollution control authorities, provided such water authority or sewer district agrees to such designation. If a new board or commission is created, the municipality shall, by ordinance, determine the number of members thereof, their compensation, if any, whether such members shall be elected or appointed, the method of their appointment, if appointed, and removal and their terms of office, which shall be so arranged that not more than one-half of such terms shall expire within any one year. The water pollution control authority of the town within which there is a city or borough shall not exercise any power within such city or borough without the express consent of such city or borough, except that such consent shall not be required for any action taken to comply with a pollution abatement order issued by the Commissioner of Environmental Protection.

"(b) Each municipal water pollution control authority designated in accordance with this section may prepare and periodically update a water pollution control plan for the municipality. Such plan shall designate and delineate the boundary of: (1) Areas served by any municipal sewerage system; (2) areas where municipal sewerage facilities are planned and the schedule of design and construction anticipated or proposed; (3) areas where sewers are to be avoided; (4) areas served by any community sewerage system

ment of environmental protection (department), the town constructed a sewer system in the early 1970s. Middlebury Plan of Conservation and Development (2001) § 9.33, p. 86. Shortly thereafter, the town recognized that its "groundwater supplies . . . were not sufficient for a community-wide water system." Id., § 9.32, p. 86. Additionally, the town concluded that overreliance on the town sewer system would exacerbate the problem because the system delivered wastewater to a treatment plant in Naugatuck, rather than returning it to the ground in the town. Id., §§ 9.32 and 9.33, p. 86. Decreased use of the town sewer system, and increased use of local, residential septic systems, would return more water to the ground in the town, thus alleviating the water shortage. Id., § 9.32, p. 86. Recognizing this, the town recommended that "sewer service not be extended into new areas" in its 1973 plan of development. Id., § 9.33, p. 86. Since then, the town has maintained a policy "of sewer avoidance in those sections of the community not already served by sewers . . . ." Id., § 9.33, p. 89. The town's formally adopted plan of conservation and development provides that "[e]xtensions of the sewer system in residential areas should be avoided, except as a last resort to alleviate a significant

not owned by a municipality and (5) areas to be served by any proposed community sewerage system not owned by a municipality. Such plan shall also describe the means by which municipal programs are being carried out to avoid community pollution problems. The authority shall file a copy of the plan and any periodic updates of such plan with the Commissioner of Environmental Protection and shall manage or ensure the effective management of any community sewerage system not owned by a municipality.

"(c) Any municipal sewer authority in existence prior to October 1, 1978, shall be deemed to be the water pollution control authority of such municipality unless the legislative body of the municipality, by ordinance, determines otherwise, and such water pollution control authority shall be deemed the successor to such sewer authority for all of the purposes of this chapter. All acts of any such sewer authorities from October 1, 1978, to June 1, 1979, are validated. The provisions of this subsection shall not apply to any action pending in any court or any right of appeal under this chapter existing on June 1, 1979."

public health problem where there is no other feasible alternative." Id. The defendant promulgated regulations that restricted the right to connect to the town sewer system to owners of "property abutting on any street, alley, or right-of-way in which there is now located or may in the future be located a public sewer . . . ." Middlebury Water Pollution Control Authority Regs., art. III, § 4.

The plaintiff is the assignee of a contract to purchase approximately thirty-three acres of land within the town, on which it planned to develop a residential housing project containing 286 units. The property does not abut a street, alley or right-of-way in which the sewer system is located. Furthermore, the property does not fall within the areas that the town had designated for sewer service.

In September, 2000, the plaintiff contacted a civil engineer employed by the defendant and expressed an interest in gaining access to the town's sewer system in order to service the property. The engineer advised the plaintiff to "[c]ontact the [defendant] concerning [the defendant's] application and design review process as soon as possible." The plaintiff met informally with the defendant in October, 2000, to discuss that process. In January, 2001, the plaintiff filed a formal application with the defendant for an extension of the town's sewer system, such that it purportedly would abut the property, and enable the plaintiff to connect to it pursuant to article III, § 4, of the defendant's regulations.[8]

Before the defendant took any action on the plaintiff's application to extend the sewer system, the plaintiff procured an option to purchase an easement over neigh-

---

[8] As stated previously, article III, § 4, of the defendant's regulations provides that a residential landowner may connect to the town sewer system only if the "property abut[s] on any street, alley, or right-of-way in which there is now located or may in the future be located a public sewer . . . ."

boring property that abutted the sewer system. The plaintiff procured this option because, in its view, after purchasing the easement, the property would abut the sewer system within the meaning of article III, § 4, of the regulations, thereby entitling the plaintiff to "connect" with the sewer system. On October 2, 2001, the plaintiff filed a revised application entitled, "Application for Sewer Extension, Connection and Operation."

The plaintiff gave a presentation concerning its application at a meeting held by the defendant on January 15, 2002. After the presentation, including a question and answer period, the defendant rejected the plaintiff's application by a unanimous vote, stating that it "did not see any reason to entertain an extension of this sewer line . . . ." The plaintiff did not appeal from the defendant's action to the department.

The plaintiff filed this action on February 20, 2002, seeking a writ of mandamus directing the defendant to grant the plaintiff's application. The plaintiff alleged that "[b]y summarily refusing to *entertain* [its] [a]pplication, the [defendant] failed to perform its administrative function." (Emphasis in original.) Furthermore, the plaintiff claimed that the defendant was required, under its own regulations, to "grant [its] [a]pplication and issue the [p]laintiff a permit to connect [the] [p]roperty to the sewer system of the [t]own" because, the plaintiff alleged, after procuring the easement, the property abutted the sewer within the meaning of article III, § 4, of the defendant's regulations.

After a trial to the court, the court determined that: (1) the defendant properly had considered the plaintiff's application, thus performing its administrative function; (2) the plaintiff's application was, in fact, an application for an extension of the sewer system, not an application for a connection to the sewer system within the meaning of article III, § 4, of the defendant's regulations; and (3)

the defendant properly had exercised its discretion in denying the plaintiff's application to extend the sewer system. See *Clark* v. *Gibbs*, 184 Conn. 410, 419, 439 A.2d 1060 (1981) (mandamus may not issue to force city clerk, acting within her discretion in preparing budget referendum forms, to adopt specific language requested by certain residents); cf. *Archambault* v. *Water Pollution Control Authority*, 10 Conn. App. 440, 446, 523 A.2d 931 (1987) (where, under town's regulations, decision to construct sewer extension is discretionary, mandamus may not issue to force town to grant extension). The court rendered judgment accordingly. This appeal followed.

On appeal, the plaintiff claims that the trial court improperly determined that: (1) the defendant actually had considered the plaintiff's application for a sewer extension, thus complying with its regulations; (2) the plaintiff's application was for a sewer extension, rather than a sewer connection; (3) the defendant's decision "not to process" the plaintiff's application was within the defendant's discretion; (4) the purchase of an easement across land abutting a sewer line did not entitle the plaintiff to connect to the sewer system under the defendant's regulations; and (5) the sewer system was not intended to service the plaintiff's property. The defendant claims that the trial court lacked subject matter jurisdiction over this mandamus action because the plaintiff had not exhausted its administrative remedies under §§ 22a-430 (f), 22a-436 and 22a-437. We conclude that the trial court lacked jurisdiction to make the determinations challenged in the plaintiff's latter four claims on appeal. We conclude, however, that the trial court had jurisdiction to make the determination that the plaintiff challenged in its first claim, namely, that the defendant actually had considered the plaintiff's application for a sewer extension. We further conclude that the trial court properly determined that the

defendant actually had considered the plaintiff's application.

Our recent decision in *River Bend Associates, Inc.* v. *Water Pollution Control Authority*, 262 Conn. 84, 809 A.2d 492 (2002), controls the resolution of this appeal. In *River Bend Associates, Inc.*, we held that a residential housing developer was required to pursue its administrative remedies prior to seeking judicial review of a decision of the water pollution control authority of the town of Simsbury denying the developer's application to connect certain real property within the town to the sewer system. Id., 87. We see no material basis to distinguish the facts of present case from those of *River Bend Associates, Inc.*

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. . . . The doctrine provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. . . . Where a statutory requirement of exhaustion is not explicit, courts are guided by [legislative] intent in determining whether application of the doctrine would be consistent with the statutory scheme. . . . Consequently, [t]he requirement of exhaustion may arise from explicit statutory language or from an administrative scheme providing for agency relief. . . . *Waterbury* v. *Washington*, 260 Conn. 506, 529–30, 800 A.2d 1102 (2002).

"If the available administrative procedure . . . provide[s] the plaintiffs with a mechanism for attaining the remedy that they seek . . . they must exhaust that remedy. . . . *Cannata* v. *Dept. of Environmental Protection*, 215 Conn. 616, 629–30 n.9, 577 A.2d 1017 (1990). The plaintiff's preference for a particular remedy does not determine the adequacy of that remedy. [A]n administrative remedy, in order to be adequate, need not

comport with the [plaintiffs'] opinion of what a perfect remedy would be. . . . *Kish* v. *Cohn*, 59 Conn. App. 236, 240, 756 A.2d 313 (2000)." (Internal quotation marks omitted.) *River Bend Associates, Inc.* v. *Water Pollution Control Authority*, supra, 262 Conn. 100–101.

"Section 22a-430 (f) provides that any permit denied or order issued pursuant to that section [such as the denial of an application for a sewer connection by a local water pollution control authority][9] shall be subject to a hearing and appeal as provided in § 22a-436 and . . . § 22a-437. Section 22a-436 provides that any person aggrieved by an order or decision to deny an application may request a hearing before the commissioner

[9] General Statutes § 22a-430 (f) provides in relevant part that "[t]he commissioner may, by regulation, establish and define categories of discharges, including but not limited to, residential swimming pools, small community sewerage systems, household and small commercial disposal systems . . . for which he may delegate authority to any other state agency . . . [or] water pollution control authority : . . to issue permits or approvals . . . ." "The broad 'including but not limited to' language of § 22a-430 (f) establishes that the department may delegate authority to water pollution control authorities to issue permits for all types of discharges that involve sewer connections.

"As it applies to discharge permits other than septic systems, including sewer connection permits, § 22a-430 (f) requires that the commissioner of the department (commissioner) act by way of regulation to effect the permissive delegation of authority. The commissioner has promulgated § 22a-430-1 (b) (1) (A) of the Regulations of Connecticut State Agencies, which provides for the delegation of permitting authority to water pollution control authorities [such as the defendant]. Specifically, § 22a-430-1 (b) (1) (A) authorizes the commissioner, by agreement, to delegate to any agent as defined in § 22a-430-1 (a) the authority to issue permits or approvals for the various categories of discharges. Section 22a-430-1 (a) defines agent as 'any state agency other than the [department], any municipal water pollution control authority, any municipal building official or municipal or district director of health.' . . . In addition, § 22a-430-1 (a) includes a category of discharge entitled '[d]omestic sewage.' Thus, § 22a-430 (f) of the General Statutes and § 22a-430-1 of the Regulations of Connecticut State Agencies set forth the power of [the defendant] and department to approve or deny sewer connection applications." *River Bend Associates, Inc.* v. *Water Pollution Control Authority*, supra, 262 Conn. 97–99.

[of the department]. Section 22a-437 provides that any person aggrieved by a decision by the commissioner may appeal from a final determination of the commissioner to the Superior Court." Id., 101.

"When an appeal is taken as authorized under § 22a-430 (f), the commissioner has full authority under § 22a-436 to consider facts and evidence and to revise the authority's action on the application as appropriate. If the plaintiffs are aggrieved by the commissioner's decision, then they can pursue an appeal to the Superior Court pursuant to § 22a-437." Id., 102.

Accordingly, as we determined in *River Bend Associates, Inc.*, with respect to the plaintiff in that case, "the department was the appropriate agency to which [the plaintiff in the present case] could have appealed the denial of the application. Thus, the [plaintiff] had an adequate administrative remedy that [it] failed to exhaust." Id.

At oral argument before this court, the plaintiff contended, without citation to any supporting authority, that the exhaustion doctrine should not apply in the present case because it seeks a writ of mandamus, rather than the declaratory and injunctive relief that was sought in *River Bend Associates, Inc.* We disagree. The department has the authority to grant the relief sought by the plaintiff in the latter four of its five claims on appeal. Specifically, in those four claims, the plaintiff seeks a writ ordering the defendant to grant the plaintiff's application for a sewer connection. "When an appeal is taken as authorized under § 22a-430 (f), the commissioner has full authority under § 22a-436 to consider facts and evidence and to revise [the defendant's] action on the application as appropriate." Id.

The plaintiff's first claim on appeal, however, that the trial court improperly determined that the defendant actually considered the plaintiff's application for a

sewer extension, requests relief that would not be available in an appeal under § 22a-430 (f). Under this claim, the plaintiff requests a writ compelling the defendant to "review the application submitted by [the plaintiff] . . . and process this application in a timely manner." Section 22a-430 (f) does not provide for this relief. Section 22a-430 (f) provides for an administrative hearing by the commissioner to review "an order or decision *to deny* an application . . . ." (Emphasis added.) Id., 101. There is no administrative remedy under § 22a-430 (f) to review the alleged failure of the defendant to act at all in response to the plaintiff's application. Therefore, the trial court did not lack jurisdiction to review that claim by virtue of the exhaustion doctrine.

The plaintiff may not prevail, however, on the merits of its claim that the trial court improperly determined that the defendant actually considered the plaintiff's application for a sewer extension. Although we review the court's factual finding under the clearly erroneous standard; *Gordon* v. *Tobias*, 262 Conn. 844, 849, 817 A.2d 683 (2003) (finding of fact clearly erroneous " 'when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed' "); the record amply supports the trial court's finding that the defendant reviewed, and then denied, the plaintiff's application for a sewer extension. In its meeting of January 15, 2002, the defendant heard a full presentation of the plaintiff's application. Following that presentation, the plaintiff fielded several questions from the defendant. Finally, after this substantial consideration, the defendant determined that the plaintiff's application was, in essence, an application to extend the sewer system and, based upon the town's long established policy of "sewer avoidance," the defendant unequivocally denied the plaintiff's application by a

unanimous vote. The plaintiff's claim that the defendant neither considered nor acted upon the application is simply contrary to the undisputed facts of this case.

The judgment is affirmed with respect to the trial court's determination that the defendant actually considered and denied the plaintiff's application for a sewer extension; the judgment is reversed with respect to the trial court's determination of the plaintiff's remaining claims, and the case is remanded to that court with direction to dismiss those claims for lack of subject matter jurisdiction.

In this opinion the other justices concurred.